171 So. 28

**STATE ex rel. TULANE HOMESTEAD ASS'N v. MONTGOMERY, State Tax Collector for City of New Orleans.**

No. 33942.

June 30, 1936.*

Rene A. Viosca, Leon Sarpy, Allain C. Andry, Jr., and Edward Dinkelspiel, all of New Orleans, for appellant.

Joseph M. Bowab, of New Orleans, for appellee George Montgomery.

*Application for rehearing withdrawn Nov. 27, 1936.

E. M. Robbert, City Atty., and H. B. Curtis, Asst. City Atty., both of New Orleans, for appellees City of New Orleans and Orleans Parish School Board.

HIGGINS, Justice.

Relator instituted mandamus proceedings for the purpose of compelling the tax collector for the city of New Orleans to cancel the assessments for taxes levied by the city of New Orleans, accruing prior and subsequent to the years of 1933 and 1934, at which time 21 pieces of real estate belonging to relator were adjudicated to the state and the city, claiming that the provisions of Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extra-Ordinary Session of 1935, entitles it to this relief. The respondent tax collector concedes that the assessments for taxes levied subsequent to the adjudication should be canceled under the provisions of the statutes, but denies that these acts cover assessments levied and taxes accruing prior to the adjudications, except the assessment of 1931, which he admitted was prescribed.

The city of New Orleans and the Orleans parish school board, with leave of court, filed interventions and answers to the relator's petition, reiterating the defenses urged by the tax collector and averring that, if the court were to construe the provisions of the statutes as affecting assessments and taxes prior to the date of the adjudications, the acts would be in violation of the provisions of article 4, § 13, of the Constitution of this state of 1921, and therefore unconstitutional.

There was judgment in favor of relator, issuing a peremptory writ of mandamus directed to the tax collector, commanding him to cancel the assessments and taxes levied in behalf of the city of New Orleans, subsequent to the adjudications and the assessments for taxes of 1931, which were conceded to have been prescribed, but denying relator's claim to have the assessments made and taxes accruing prior to the adjudications canceled.

Relator has appealed.

The facts in the case are undisputed and the record shows that the relator homestead association is the owner of 21 pieces of real estate situated in the city of New Orleans. With the exception of 2 pieces, one of which was adjudicated to the state, and the other to the city, 19 of these properties were adjudicated to both the city of New Orleans and the state of Louisiana for the nonpayment of taxes. All of the adjudications were made during the years of 1933 and 1934. The homestead, availing itself of the provisions of Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extra-Ordinary Session of 1935, redeemed all of the properties from both the city and state and secured certificates of redemption from the city of New Orleans and the register of state lands, in accordance with the provisions of the statutes, which permit redemption by payment on an installment basis.

The homestead thereupon secured from the Louisiana Tax Commission orders addressed to George Montgomery, state tax collector for the city of New Orleans and tax collector also of city taxes of New Orleans, directing and ordering the cancellation of all assessments bearing upon

the properties for the years 1931 and 1936, inclusive. The homestead then applied for city and state tax research certificates and demanded that Mr. Montgomery, city and state tax collector, cancel these assessments from the city and the state tax rolls and issue clear city and state tax research certificates. Mr. Montgomery canceled the assessments from the state tax rolls and issued clear certificates on the properties for the years 1931 to 1936, inclusive, but declined to cancel the assessment from the city tax rolls and refused to issue clear tax research certificates as to the city assessments and taxes accruing prior to the adjudication.

■ Relator challenges the right of respondent and interveners as subdivisions and officers of the state to question the constitutionality of state statutes, citing State ex rel. Nicholls, Governor, et al. v. City of New Orleans, 41 La.Ann. 156, 6 So. 592; State ex rel. New Orleans Canal & Banking Co. & La. Nat. Bank v. Heard, State Auditor et al., 47 La.Ann. 1679, 18 So. 746, 47 L.R.A. 512; Crespo v. Viola, 152 La. 1088, 95 So. 256; Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871, and State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826. The argument is that subordinate subdivisions of the state and state officials must obey and enforce state statutes until they are declared unconstitutional by a court of competent jurisdiction.

The plea of respondent and interveners is that, if the interpretation contended for by the relator were adopted, the statutes would be unconstitutional. They are clearly entitled to have the court decide whether or not the acts affect assessments and taxes prior to the adjudication, in short, to have the court construe and interpret the acts, for they would then be endeavoring to determine the legislative will and not be trying to defeat it. It is only in the event that the court were to hold that the statutes apply to assessments and taxes prior to the adjudication that the constitutional question would be presented. Be that as it may, the identical issue was raised in the case of the City of Gretna v. Bailey, 141 La. 625, 626, 75 So. 491, 493, Ann.Cas.1918E, 566, and, in answering the question in the affirmative and overruling the case of Mayor and Council of City of Carrollton v. Board of Met. Police, 21 La.Ann. 447, this court said:

"It would be an absurdity to hold that a corporation created by the Legislature, with authority to prosecute and defend suits in the courts, cannot invoke the protection afforded by the Constitution to prevent a violation of the rights granted to it. The decision cited in support of that doctrine is more of a historical incident than a proposition of law, and we feel no compunction in overruling it."

"Of course, a municipal corporation, being a creature of the Legislature, cannot question the authority of the creator of its charter to amend the same, except in so far as the Legislature attempts to exceed its own constitutional authority. But the General Assembly is as well bound not to violate the mandates expressed in the Con-

stitution as a corporation created by the Legislature is controlled by its statutes."

As pointed out by the Court of Appeal for the parish of Orleans, in the case of State ex rel. Huggett v. Montgomery, 167 So. 147, there was uncertainty in the jurisprudence prior to the case of City of Gretna v. Bailey, supra, but, other than obiter dicta, there is no case subsequent to the Bailey Case in conflict therewith. See, also, State ex rel. Board of School Directors of Pub. Schools v. City of New Orleans, 42 La.Ann. 92, 7 So. 674.

The case of State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826, is not in point, because the question here presented was not involved, considered, or discussed there.

We are of the opinion that the respondent and interveners have the capacity and authority to have the statutes construed and interpreted by the court and to question the constitutionality of them in court.

■ Act No. 161 of 1934 authorized owners or persons interested in property adjudicated prior to the passage of the act "to redeem such adjudicated property from the State, or any of its political sub-divisions, from the date of the passage of this Act, and up to and including September 30th, 1935, upon the payment in five equal annual installments of the amount of the actual taxes for which said lots or lands were adjudicated to the State, or any other of its political subdivisions."

Act No. 14 of the Fourth Extra-Ordinary Session of the Legislature of 1935 amended the statute so as to extend the redemptive period "to twelve o'clock noon of the twentieth day after the regular session of the Legislature of 1936 shall have adjourned." The act was also amended so as to include the parish of Orleans which had been expressly excepted from the provisions of the act of 1934.

Under the laws that existed before 1934, the owner whose property was sold for taxes, in order to redeem his property, would have had to pay all taxes up to the date of redemption, including, of course, taxes accruing subsequent to the date of the adjudication of the property to the city or state. Section 62 of Act No. 170 of 1898, as amended by Act No. 72 of 1928; Act No. 85 of 1888; Gamet's Estate v. Lindner et al., 159 La. 658, 106 So. 22. The only authority for ordering the cancellation of such assessments and taxes is Act No. 161 of 1934, as amended, which the legislators were prompted to enact due to economic conditions, in order to relieve distressed property owners.

It is clear, and it is conceded, that, under these relief measures, state and city assessments for taxes becoming due subsequent to the years in which the property was adjudicated shall be canceled. The difficulty arises as to the applicability of the provisions of the statute to the assessment and taxes due for the years prior to the time of the adjudication to the state or city. There was no controversy as to the state taxes, because the state sells the property for the delinquent taxes the year after the taxes are due. In other words, state taxes are due on December 31st of each year and, before the end of the following year, the state tax sales are

made. Therefore, there are no intervening taxes which can become due between the year for which the property was sold and the year in which it was sold. The problem presented arises from the method of handling tax sales in the city of New Orleans. The city does not make its tax sales until just before the end of the three-year prescriptive period provided for in the Constitution. Article 19, § 19, Const.1921. In short, sales for city taxes which became due in 1931 were not made until the end of the year of 1934. In the meantime, the city taxes for 1932, 1933, and 1934 had become due and payable, and the question, therefore, to be decided is whether or not the Legislature intended Act No. 161 of 1934, as amended by Act No. 14 of 1935, Fourth Extra-Ordinary Session, to authorize the cancellation of these intervening city assessments and taxes. If so, would the act, as thus interpreted, be in violation of the provisions of article 4, § 13 of the Constitution of 1921, which provides that "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof; provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them?" Counsel for interveners say it would, citing Succession of Popp, 146 La. 464, 83 So. 765, 26 A.L.R. 1446.

It is obvious that, since the Legislature adopted Act No. 161 of 1934 and specially excepted the parish of Orleans from the operations of its provisions, which therefore applied to the other parishes throughout the state, it did not take into consideration the rather unusual manner in which the city authorities sold property for delinquent taxes by allowing nearly three years to lapse, whereas the state only allowed one year. It appears that when the Legislature amended the act of 1934 by passing Act No. 14 of the Fourth Extra Session of 1935, the only pertinent changes made were to extend the redemptive period of time and to include the parish of Orleans within its provisions. No special provision was made for the unusual condition which existed in the city of New Orleans concerning prior assessments and taxes due before the adjudication. It is obvious that this was an oversight for, if the Legislature intended to give the delinquent taxpayer of the city of New Orleans a greater benefit than the other delinquent taxpayers throughout the state, by authorizing the cancellation of taxes due both prior and subsequent to the adjudication, appropriate language to that effect would have been employed, especially, where the amending act was bringing the parish of Orleans under Act No. 161 of 1934, which was not designed for the particular delinquent tax problem present in the city of New Orleans, resulting from its more generous attitude towards the delinquent taxpayer. There is no such language to be found in the acts. We are confirmed in this view by the opinion of the district court and the Court of Appeal in the case of State ex rel. Huggett et al. v. Montgomery, supra, and certain expressions in the case of State ex rel.

Violet Trapping Co. v. Grace, 182 La. 405, 162 So. 26. The fisc of a municipality should not be interfered with lightly and we shall not do so in interpreting these acts in the absence of a clear and unambiguous expression of legislative will to that effect, particularly where it would involve the acts in a serious constitutional question. In re Interstate Trust & Banking Co. v. Baker, 169 La. 766, 126 So. 54; Gamet's Estate v. Lindner et al., supra.

Furthermore, laws are not presumed to be retrospective in their effect but prospective. Act No. 161 of 1934 was held to be constitutional in so far as assessments and taxes accruing after the adjudication were concerned in the case of State ex rel. McGregor et al. v. Diamond, Marshal, et al. (La.App.) 167 So. 760, citing with approval the Huggett Case, supra.

We are of the opinion that it was never contemplated by the members of the Legislature and it was not their intention to deprive the city of New Orleans and its respective boards of the revenues which have accrued in the form of taxes prior to the adjudication of the property.

Having reached this conclusion, the question of the constitutionality of the statutes raised by the respondent and the interveners necessarily passes out of the case.

Relator next contends that the taxes for the years 1931, 1932, and 1933, and in some cases for 1934, were extinguished by confusion, because the city became the adjudicatee of the property at tax sale and therefore could not owe itself taxes, citing articles 3277 and 3411, Rev.Civ.Code.

The argument is entirely without merit as against the city, where the property was adjudicated to the state and not to the city, because, obviously the city did not become the owner thereof. In the cases where the property was adjudicated to the city, it must be borne in mind that the city did not become the unconditional owner of the property, because the taxpayer had a right to redeem it.

In the case of Untereiner v. City of New Orleans, 10 La.App. 667, 120 So. 884, the plaintiff sought to enjoin the sale of the property for city taxes and paving charges for the years 1924 and 1925 on the ground that, as the property had been adjudicated to the city in 1922 for the unpaid city taxes and paving charges, the city taxes for 1924 and 1925, and all paving charges, were extinguished by confusion, the quality of debtor and creditor having been combined in the owner, the city. The Court of Appeal in rejecting plaintiff's argument stated:

"Under the authority of State ex rel. Benedict v. City of New Orleans, 112 La. 408, 36 So. 475, it seems quite evident that no such full and perfect ownership resulted from the adjudication as is required where extinguishment by confusion is claimed."

A similar decision was rendered by this court in the case of Moore v. Boagni et al., 111 La. 490, 35 So. 716, 719. The property involved belonged to Miss Pamela Moore and was adjudicated at tax sale to Dr. Vincent Boagni, who, at the time of the adjudication, was a mortgage creditor of the owner. In deciding the case, the court said:

"It is argued that the immediate effect of the adjudication was ipso facto to extinguish his mortgage, and make him at once the absolute owner of the property. We are not of that opinion.

" 'The adjudicatee acquired but an inchoate title, which did not divest the liens against the taxpayer's land until after the time limited by the law for redemption had passed.' Singer's Appeal (Pa.) 7 A. 800 [4 Sad. 430].

" 'The general rule is that until the expiration of the time for redemption, and the execution and delivery of the deed, the title to the land remains with the execution debtor.' Cooley on Taxation (3d Ed.) c. 15, p. 984; Thibodaux v. Keller, 29 La.Ann. [508] 511."

The plea of confusion is untenable.

▆ Relator also interposed a plea of prescription of three years against the city's claim for taxes for 1931 and 1932, under article 19, § 19 of the Constitution of 1921, dealing with privileges for taxes—state, parish, and municipal. The pertinent part reading as follows:

"Provided such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December in the year in which the taxes are levied, and whether now or hereafter recorded."

It is conceded that the lien securing the taxes for 1931 prescribed, but respondent and interveners point out that the lien securing the taxes of 1932 is not prescribed, because prescription was interrupted by the action of the Legislature when, at its regular session in 1934, it adopted House Concurrent Resolution No. 2 (Acts 1934, p. 665), providing for the temporary suspension until October 1, 1934, of the operation of all laws relating to seizure, advertisement, and sale of property upon which delinquent taxes were due, and particularly section 60 of Act No. 170 of 1898, as amended by Act No. 315 of 1910; and further postponed the payment and collection of all taxes assessed on the assessment rolls of the various parishes of the state of Louisiana and due the state and to each and every parish, municipality, or other political subdivision until October 1, 1935, when it adopted House Concurrent Resolution No. 5 (Act No. 34 of 1935, 2d Ex.Sess.). The effect of these two concurrent resolutions was to suspend for two periods, aggregating almost a year, any action on the part of the tax collector to enforce collection of taxes. Article 19, § 19, of the Constitution of 1921, granted to the taxing authorities three full years within which to collect the taxes due the state, parish, or municipality. If, by law, this period was interrupted and the right to collect the taxes suspended, then the taxing authorities are entitled to additional time within which to collect the taxes and, at the very least, should have the same amount of time as was taken away from them by the laws which suspended the collection of the taxes. This is true where the other construction might make the acts unconstitutional. Taylor v. Succession of Sweetman, 184 La. 755, 167 So. 431. Therefore, the tax liens for the taxes of 1932 have not been prescribed.

For the reasons assigned, the judgment appealed from is affirmed.