**STATE ex rel. SALOMON v. CITY OF NEW ORLEANS et al.**

**No. 16676.**

Court of Appeal of Louisiana. Orleans.

May 31, 1937.

Jas. W. Hopkins, of New Orleans, for appellant.

E. M. Robbert, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, for appellees.

Percy Stern, Dufour, St. Paul, Levy & Miceli and Anna Judge Veters, all of New Orleans, amici curiæ.

JANVIER, Judge.

Relatrix, Mrs. Blanche R. Salomon, widow of Meyer J. Prince, is owner of a certain portion of real estate situated on Canal street in New Orleans. She seeks, by mandamus, the cancellation of the tax lien and privilege claimed by the city to still subsist as the result of the inscription of the tax assessment against the property for the year 1932, but which, she maintains, has been terminated by the prescription of three years established by article 19, § 19, of the Constitution of 1921, as well as by section 1 of Act No. 26 of 1886 (Dart's La.Gen. Statutes, § 8453). She also prays for the cancellation, for other reasons, of the assessments for other years subsequent to

1932, but, an agreement having been reached concerning those inscriptions, by which agreement some have been paid by her and some canceled, we need consider only the one for the year 1932.

■ On December 1, 1934, the property was adjudicated to the city for the tax of 1931. At that time the tax for 1932 was also past due, as were other and later taxes. Relatrix made no effort to redeem the property until May 21, 1936, at which time, taking advantage of the redemption statute, Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extraordinary Session of 1935, she redeemed it upon the payment of taxes for the year for which it had been adjudicated, to wit, 1931. At the time of the redemption and subsequent to the adjudication, the taxes for the years 1935 and 1936 had accrued and, because of the operation of the redemption statutes the inscriptions for those years were canceled. The taxes for 1932, 1933, and 1934, having accrued prior to the adjudication to the city, were not affected by the redemption statutes as interpreted in State v. Montgomery (La.App.) 167 So. 147 (familiarly known as the Huggett Case); State ex rel. Phœnix Homestead Ass'n v. City of New Orleans (La.App.) 169 So. 825 (familiarly referred to as the Phœnix Homestead Case); and State ex rel. Tulane Homestead Ass'n v. Montgomery, 185 La. 777, 171 So. 28 (familiarly referred to as the Tulane Homestead Case).

Relatrix, therefore, having redeemed the property for the taxes for 1931, paid the tax for 1933 and the tax for 1934, but contended that the lien for the tax for 1932 had prescribed. When the taxes for 1933 and 1934 were paid after the redemption, they were paid under an agreement that, by accepting those payments, the city should not be estopped to contend that the tax for 1932 was still due, and it was agreed to submit to the courts that question of whether the tax for 1932 had prescribed. This suit is the result.

In the district court, there was judgment recalling the alternative writ of mandamus, denying the injunction prayed for, and dismissing the suit of relatrix at her cost. She has appealed.

Respondents, the City of New Orleans and Jesse S. Cave, Commissioner of Public Finances of the city, show that from December 4, 1934, until March 21, 1936, the property stood adjudicated to the city for nonpayment of the 1931 tax and that there was nothing that they could do to collect the tax nor to extend the effect of the tax lien because of Act No. 170 of 1898, which provides, in section 61, that where property has been adjudicated to the state, though it shall continue to be assessed "in the name of the person to whom it belonged at the date of the sale, * * * the tax collector shall not sell the same under the assessment," and no tax shall be collected or received thereon by the tax collector of or from the former owner while said property remains in a condition of forfeiture to the state. They concede that the said statute in terms refers only to taxes due to the state, but they show that it has been made to apply to municipal taxes as well as a result of the provisions of Act No. 119 of 1882. They argue that, since, during that period, no action could have been taken to collect the tax for 1932, nor to extend the effect of the tax lien, the tolling of prescription was interrupted.

Relatrix, in turn, argues that, since the statute of 1886 recognizes one situation from which the interruption of the prescription of a tax lien may result and fails to recognize any other situation or state of facts as sufficient to effect such interruption, none results except only in the one case set forth in the said statute. That one situation is "the pendency of any suit which prevents the collection of said taxes." Counsel point to the word "suit" and maintain that, whatever else it may be that prevents the collection of taxes, no interruption of prescription results.

■ When, in May, 1936, relatrix redeemed her property under Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extraordinary Session of 1935, it was turned back to her, as it must have been upon payment of only "the actual taxes for which [it was] adjudicated"; that is to say, for the tax for 1931. Those statutes have now been discussed in three cases, namely, State v. Montgomery, State ex rel. Phœnix Homestead Ass'n v. City of New Orleans, and State ex rel. Tulane Homestead Ass'n v. Montgomery, supra. It is now well settled in those decisions that, as a result of those statutes, there were eliminated as debts against the property the taxes which accrued while the property stood under adjudication to the city, but not those unpaid taxes which accrued prior to the adjudication.

"We are of the opinion that it was never contemplated by the members of the Legislature and it was not their intention to deprive the city of New Orleans and its respective boards of the revenues which have accrued in the form of taxes prior to the adjudication of the property." State v. Montgomery, supra.

The taxes for 1932, 1933, and 1934, accrued prior to adjudication, and the effect of the decisions just above referred to was recognized by relatrix, who, as we have shown, paid the taxes for 1933 and 1934 and who concedes that, but for the alleged accrual of prescription, the property would still remain liable for the tax for 1932.

■ It is obvious that when, on December 4, 1934, the real estate was adjudicated to the city for the tax of 1931, it immediately—and so long as there was no redemption from or sale by it—lost all right to sell the property for any subsequent tax or to even receive any subsequent tax payment by reason of the Act of 1898, to which we have already referred. During that period the hands of the city were tied; it could do nothing whatsoever concerning the tax for 1932—the very tax which is here involved. That prior to the special redemption statutes of 1934 and 1935 the prescription of the tax lien was in effect interrupted by adjudication to the taxing authority is very evident, for, in section 62 of the statute of 1898, it is provided that, whenever property is redeemed, however long it may have remained under adjudication, the amount paid in redemption must include "all taxes * * * due up to the day of redemption."

When we remember that by section 61 of the same statute the taxing authorities, during the period within which the property stands adjudicated, are prevented from collecting such subsequent taxes and then consider that, no matter how long the property may remain under adjudication, the taxes accruing from year to year remain effective against the property when it is redeemed, we at once see that, in effect at least, the legislators provided for the interruption of prescription during such period. We do not lose sight of the fact that it is true that it has been held that when there is a redemption it may be on such terms as the state may authorize and that, therefore, when, as in section 62, the state requires that all taxes must be paid, it does so under its right to make a contract on its own terms and not because prescription has not accrued. But we believe that, where the state has provided that taxes which would otherwise have prescribed must, nevertheless, be collected, there is recognition of the principle that, during the period within which there may be no action, prescription should not be permitted to run. "Contra non valentem agere non currit prescriptio."

■■ We cannot look upon the tax for the year 1932 as a mere bookkeeping entry, as such an inscription for taxes accruing during adjudication must be considered (State ex rel. Huggett v. Montgomery, supra; State ex rel. Tulane Homestead Association v. Montgomery, supra), for, since it accrued prior to adjudication, it was an actual debt and could not, for constitutional reasons, be canceled by legislative enactment. Article 4, § 13, Constitution of 1921. Therefore, to grant to relatrix the relief for which she prays would be to permit an unconstitutional result to flow indirectly from the application of the emergency redemption statutes of 1934 and 1935.

If those statutes had not been enacted, the redemption, because of section 62 of Act No. 170 of 1898, could have been effected only upon payment of the tax for 1932, together with other past-due taxes. We have already held in the Huggett Case that, if the emergency redemption statutes should be construed as extinguishing tax obligations for any period prior to adjudication, they would to that extent have been violative of the constitutional inhibition against legislative extinguishment of debt. Where, then, the redemption has been effected not under the prior rule of law, but under the special exemption statutes, and it is claimed that those statutes have temporarily eliminated provisions of the general statutes that all past-due taxes must be paid in order to effect redemption and that, at the same time, the prescription of three years has been continuously running, it is obvious that an unconstitutional result—the legislative extinguishment of debt—would thus be permitted to flow from the effect of the emergency statutes.

Relatrix asserts that the City of New Orleans could have protected its rights to the tax of 1932, even under the emergency redemption statutes, by adjudicating the property (in 1934) for the tax of 1932 together with the tax of 1931, since at that time both, and also the taxes for 1933 and

1934, had accrued. It may be that that result could have been accomplished in that way, though there may be some doubt as to that, since the tax adjudication section (section 61 of Act No. 170 of 1898) seems to provide that the adjudication shall be made for the tax for one year and the taxes for subsequent years shall be merely recorded against the property. But even if it be conceded that the city could have adjudicated the property for taxes for more than one year and that, as a result, it could, even under the emergency redemption statutes, have refused to permit redemption except for the payment of "the actual taxes for which * * * (the property) * * * was adjudicated," still there is nothing to show that there was a duty in the city to adjudicate it for more than one year, and it is well known that it is not the custom to do so.

When the adjudication was made in 1934, the only statute which affected the situation was the act of 1898, which required that on redemption all past due taxes should be paid. There was, then, no reason for the city at that time to anticipate that it would be necessary for it to protect itself by selling the property for taxes for more than one year in order that it might guard against the effect of a statute not passed until a year later.

Although the action of the Legislature in 1934 and in 1935 in suspending, for almost a year, the right to enforce the collection of taxes is not seriously relied upon as extending the period of prescription except to the extent of the periods of the two moratoria, still we find interesting the discussion indulged in by the Supreme Court in the Tulane Homestead Case, 185 La. 777, 171 So. 28, 32, concerning the effect upon prescription of statutes which prevent the taking of action looking to the collection of taxes or the enforcement of tax liens. It must be remembered here that the basis of the argument of relatrix is that the prescription of three years is interrupted only by "the pendency of any suit" and that, whatever else it may be that prevents action, the prescription nevertheless runs against the taxing authorities. How, then, may we explain the following language in the Tulane Homestead Case:

"The effect of these two concurrent resolutions was to suspend for two periods, aggregating almost a year, any action on the part of the tax collector to enforce collection of taxes. Article 19, § 19, of the Constitution of 1921, granted to the taxing authorities three full years within which to collect the taxes due the state, parish, or municipality. If, by law, this period was interrupted and the right to collect the taxes suspended, then the taxing authorities are entitled to additional time within which to collect the taxes and, at the very least, should have the same amount of time as was taken away from them by the laws which suspended the collection of the taxes. This is true where the other construction might make the acts unconstitutional. Taylor v. Succession of Sweetman, 184 La. 755, 167 So. 431. Therefore, the tax liens for the taxes of 1932 have not been prescribed."

The court, it will be noted, did not state that the prescriptive period must commence to run anew, but merely that there is taken out of it the time within which no action may be·taken. In that case the time covered by the two moratoria, if deducted, would have left less than three years, and therefore it was held that the prescription had not accrued. In the case at bar, if we deduct the period covered by the two moratoria, still more than three years will have run.

But respondents point not only to that period as being one in which they could take no action, but they also point to the period during which, because of the adjudication itself, they could do nothing, and we think that the legal principle which the Supreme Court followed and which is indicated in the above quotation is applicable equally to the one period as to the other.

We think it proper to refer to the fact that in each of the three cases so often referred to in this opinion the city inadvertently and improperly conceded that in just such a situation as is presented here prescription had accrued and that the tax lien had been lost thereby. But the city has now discovered the legal error into which it fell in each of those cases and, having made the discovery, it cannot be bound perpetually by its former mistake, for, as stated by counsel for respondents in their brief, "it is elemental that no action or inaction on the part of the City officials can prejudice the fisc." · Either the taxes for 1932 are due or they are prescribed. And the fact that the city, in earlier cases, made erroneous concessions as to

matters of law can have no effect in this litigation.

Counsel for amici curiæ contend that the doctrine "contra non valentem agere non currit prescriptio" cannot be applied for the reason that the inability of the city to act resulted—so counsel maintain—from the city's own neglect and they cite several cases in which it was held that the doctrine could not be applied; for instance, Klopstock & Co. v. United Fruit Co., 171 La. 296, 131 So. 25, 27, in which the court refused to apply the doctrine, stating that "plaintiff had ample opportunity to sue earlier." But here we do not see that there was any opportunity to sue at a time when suit was necessary and we feel that neither that case, nor the others cited, have any application.

The judgment appealed from is affirmed, at the cost of relatrix.

Affirmed.