324 So.2d 587 (1975)
W. E. GROVES
v.
The BOARD OF TRUSTEES OF the TEACHERS' RETIREMENT SYSTEM OF LOUISIANA.
No. 10491.
Court of Appeal of Louisiana, First Circuit.
November 24, 1975.
Rehearing Denied January 12, 1976.
Writ Refused February 17, 1976.
*589 Eugene R. Groves, Baton Rouge, for appellant.
William T. Reeves, Jr., Baton Rouge, for Teachers' Retirement System of La.
David L. Dawson, Jr., Baton Rouge, for Retired La. Teachers' Assn., Inc.
*590 Stephen M. Cohen, New Orleans, for Intervenor La. Federation of Teachers.
Before LANDRY, COVINGTON and BARNETTE, JJ.
LANDRY, Judge.
Plaintiff W. E. Groves (Appellant) appeals from judgment allowing intervention herein by Louisiana Retired Teachers' Association, Inc. and Louisiana Federation of Teachers (Intervenors), and dismissing Appellant's suit for mandamus to compel defendant, Board of Trustees of the Teachers' Retirement System of Louisiana (Appellee Board), to pay Appellant retirement benefits allegedly due as a retired member of the Teachers' Retirement System of Louisiana (State System). We affirm in part, reverse in part and award Appellant certain retirement benefits.
The facts involved herein are virtually undisputed; the primary issues presented on this appeal are questions of law. Appellant was initially engaged by the former Orleans Parish Teachers' Retirement System (Orleans System) as an actuary in 1948. At that time, and continuously since, Appellant also served as actuary to several other state and local retirement systems. In 1950, the Secretary-Treasurer of the Orleans System, who was also Secretary of the Orleans Parish School Board (School Board), retired and left vacant the position of Secretary-Treasurer of the Orleans System. Appellant was appointed temporary Secretary-Treasurer of the Orleans System to replace the retired Secretary. Because the retired Orleans System Secretary also served as Secretary of the School Board, she was not paid by the Orleans System for her services as Secretary-Treasurer to that organization. Rather the Orleans System paid the School Board a fee for keeping its books, and the School Board in turn paid the former secretary for services rendered to both the. Orleans System and the School Board.
When Appellant became Secretary-Treasurer of the Orleans System in 1950, it was agreed that, in addition to Appellant's retainer as actuary, the Orleans System would pay Appellant as its Secretary the same amount formerly paid the School Board to keep the Orleans System's books. Pursuant to this arrangement Appellant was issued two checks monthly, one for his fee as retained actuary, and the other for his agreed salary as Secretary. Appellant continued to serve in both capacities and under the same payment procedure until 1971 when the Orleans System was merged with the State System pursuant to Act 3 of 1971.
From 1950 to 1971, Appellant's duties as actuary and Secretary-Treasurer were for all practical purposes completely merged. Mr. Groves maintained his own office from which he provided not only actuarial counsel and guidance to the Orleans System, but also retirement counsel to the numerous teacher members of the system. It is undisputed that Appellant often exceeded the normal working day in his office to accommodate teachers requesting advice concerning retirement benefits. As actuary Mr. Groves assisted in preparing legislation required by the system, attended legislative sessions on behalf of the system, and kept the system's Board of Trustees fully advised concerning the status of its assets. As Secretary-Treasurer, Appellant attended Board meetings, advised prospective retirees concerning their benefits, calculated benefits for retirees, and received and accounted for contributions from the School Board. Appellant concedes that during the period 1950-1971, he continued to render actuarial and investment counseling service to several other retirement systems. He contends he did so on an overtime basis by utilizing his evenings and week ends.
No deductions were ever made for retirement benefits, social security payments or income tax withholding from any payments made to Appellant, either as actuary *591 or Secretary-Treasurer of the Orleans System. Admittedly, Appellant never became a member of the Orleans System, and made no contributions thereto because the law provided that only employees of the Orleans School Board could become members of the Orleans System, and Appellant was never employed by that Board.
On May 1, 1971, Appellant was employed by the Board of Trustees of the Orleans System as Secretary-Treasurer of that system. Claiming credit for 22.92 years service to the Orleans System, Appellant retired from the State System effective October 1, 1971, the merger of the two systems having become effective July 1, 1971. Appellant was paid retirement benefits monthly until May 1, 1974, on which date Appellee Board discontinued payment.
Appellant's claim is predicated upon Act 3 of 1971, Section 2, which pertinently provides:
". . . All persons employed or retained by the Board of Trustees of the New Orleans Teachers Retirement Fund as of May 1, 1971, shall become members of the Louisiana State Teachers Retirement System on the effective date of the merger, with full credit for all previous service as an employee of the Board of Trustees, Teachers Retirement Fund of New Orleans."
Appellant contends Act 3 of 1971 was intended to benefit those employees of the Board of Trustees of the Orleans System who lost their jobs because of the merger. Appellant points out that these employees consist of two clerical employees and Appellant himself. It is urged that Act 3 of 1971 is self-explanatory, clear and unambiguous in that it expressly states that all persons "employed or retained" by the Board of Trustees of the Orleans System as of May 1, 1971, shall become members of the State System.
Appellees question Appellant's right to proceed by mandamus to enforce the claimed right to retirement benefits on the ground that determination of Appellant's rights involves a matter of discretion, not a mere ministerial function on the part of Appellee Board.
On the merits, Appellees contend Appellant is not entitled to retirement benefits because Appellant was never employed by the Orleans System and made no contribution to its retirement fund. It is Appellees' position that the legislature never intended that Act 3 of 1971 apply to persons who made no contribution to either the Orleans or State System. Finally, Appellees contend that to grant Appellant retirement benefits without Appellant having made contribution would erode the rights of retirees of the State System and would violate state constitutional provisions which prohibit donation of public funds to private persons.
The trial court rejected Appellant's claim upon finding that mandamus was not the proper procedure in a matter of this nature, and also because Appellant was never an employee of the Orleans System. Appellant applied for a new trial which the lower court granted limited to argument only. On conclusion of the new trial, the lower court rendered judgment upholding Intervenors' right of intervention, and again rejecting Appellant's claim for benefits on the ground that although Appellant was employed as Secretary-Treasurer of the Orleans System, Appellant was not entitled to retirement benefits because Appellant made no contribution to the retirement fund. In essence the trial court held it was unreasonable to interpret Act 3 of 1971 to apply to employees who made no contribution to either the Orleans or State System.

IS MANDAMUS A PROPER REMEDY?
Invoking LSA-C.C.P. art. 3863, Appellees contend that determination of Appellant's retirement eligibility is a discretionary rather than ministerial function, and consequently, that mandamus is not a proper vehicle for relief in this instance.
*592 Our jurisprudence is well settled to the effect that a mandatory duty of a public official or employee to perform some official act does not become less mandatory or ministerial merely because the statute creating the duty may require, to some degree or extent, construction of the statutory language. Cook v. City of Shreveport, 163 La. 518, 112 So. 402; Board of Trustees of the Firemen's Pension and Relief Fund of New Orleans v. City of New Orleans, La.App., 207 So.2d 168; State ex rel. Saint v. Toups, La.App., 95 So.2d 55; State ex rel. Nunez v. Baynard, La.App., 15 So.2d 649; Dupuy v. Jones, La.App., 15 So.2d 528. See also, White v. Board of Trustees of the Teachers' Retirement System of Louisiana, La.App., 276 So.2d 714.
The hereinabove quoted portion of Section 2 of Act 3 of 1971 specifically declares that persons retained or employed by the Orleans Board on May 1, 1971, shall become members of the State System on the effective date of the merger with full credit for all prior service rendered the Board of Trustees of the Orleans System. If Appellant was retained or employed by the Orleans Board of Trustees on May 1, 1971, by the express terms of the statute, Appellant became a member of the State System on the effective date of the merger, and Appellee Board has no discretion whatsoever in the matter. Appellee Board's only duty is to pay Appellant retirement benefits if Appellant is entitled thereto pursuant to the statute. Consequently, the issue is basically a matter of statutory construction concerning which Appellee Board has no discretion whatsoever. While Appellee may properly question Appellant's asserted construction of the statute, it does not follow that Appellant may not resort to mandamus to determine the scope of the statute involved. We conclude, on the basis of the authorities cited above, mandamus is available to Appellant in this instance.

WAS INTERVENTION PROPERLY ALLOWED?
Appellant contends that intervention was erroneously allowed herein because: (1) intervention is not permissible in a mandamus proceeding; and (2) Intervenors lack sufficient interest in the subject matter of this litigation. The trial court found that Intervenors possessed the required interest to intervene because the record showed that substantial contributions were made by members of Intervenors and their employers to the fund from which Appellant seeks retirement benefits, and that any benefits paid Appellant would reduce the fund available to pay benefits to Intervenors' members.
LSA-C.C.P. arts. 3861-3866 and 1091-1094, dealing with mandamus and intervention, respectively, do not expressly prohibit intervention in a mandamus proceeding.
Our jurisprudence has repeatedly recognized the right of intervention in a mandamus proceeding. See State ex. rel. Pope v. Bunkie Coca-Cola Bottling Co., 222 La. 603, 63 So.2d 13; State ex. rel. Continental Supply Co. v. Fontenot, 152 La. 912, 94 So. 441; State ex rel. Union Cent. Life Ins. Co. v. Dunn, 133 La. 221, 62 So. 639; State ex. rel. Board of Commissioners of Saline Levee & Drainage District v. Capdeveille, 122 La. 615, 48 So. 126.
We hold, therefore, intervention was properly allowed in this instance.

APPLICABILITY OF ACT 3 OF 1971
Act 3 of 1971 provides for the merger of the Orleans and State Systems and states that members of the Orleans System shall become members of the State System with full credit in the State System for services credited in the Orleans System, and also that members of the Orleans System shall be entitled to all benefits of retirees of the State System. Appellant contends the hereinabove quoted provision *593 in Section 2 of Act 3 was intended to compensate Appellant and other employees of the Orleans System who would lose their jobs in the merger. Appellee Board and Intervenors contend this provision was merely a catch-all to insure that no member of the Orleans System would be adversely affected by the merger, and that it does not purport to confer membership in the State System upon persons who made no contribution to the Orleans System.
Appellee Board and Intervenors note that Section 1 of Act 3 of 1971 recites that the State System shall be the sole retirement system for teachers and other employees of the public schools who were eligible for membership prior to the effective date of Act 3. They refer to Section 2, which relates that all members of the Orleans System shall be members of the State System, and, as such, entitled to all rights and benefits of such membership, subject to all rules and regulations governing benefits therein. Section 2 of Act 3 of 1971 also provides for a transfer of service credits from the Orleans System to the State System. It is contended that Appellant could not be a member of the Orleans System because Appellant does not meet the definition of Teacher as contained in LSA-R.S. 17:771(19), and also because Appellant was ineligible for membership in the Orleans System pursuant to LSA-R.S. 17:803, which denied membership to a person over 50 years of age and lacking in prior teaching experience. Appellee Board and Intervenors next point to LSA-R.S. 17:593, which denies membership in the State System to any person over 50 years of age unless the party transfers membership from another system as provided for by LSA-R.S. 17:598. It is conceded that Appellant was over 50 years of age when the merger was effected.
Appellee Board and Intervenors also note the following retirement statute provisions: LSA-R.S. 17:593.3, which permits a teacher who commences teaching after age 50 to become a member after 15 years service upon making certain contributions to the retirement fund; LSA-R.S. 17:593.1 and 17:600, which allow a person who is over 50 years old when employed as a teacher to become a member by making payments to the retirement fund for years of teaching service in other state institutions and agencies where such other years of service plus service rendered after employment will equal or exceed 15 years service prior to attaining age 65; LSA-R.S. 17:593.4, which permits a person who will have 10 years of service at age 65 to join the State System upon payment of contributions; LSA-R.S. 17:600.2, which allows a teacher to purchase up to 4 years of credit for military service; and LSA-R.S. 17:600, pursuant to which members of the State System may purchase service in any agency upon meeting certain requirements, which include contributions by the member and payment of employer contributions. It is suggested that these various statutory provisions indicate legislative intent that members of the State System shall contribute thereto as a condition precedent to receipt of pension benefits.
Appellant notes numerous instances in which retirement benefits have been provided without contribution of the part of beneficiaries of the systems. Appellant cites instances in which free credit is given to members upon creation of a retirement system. Examples of this nature are Act 83 of 1936, Section 1(11), Section 4, LSA-R.S. 17:622, Teachers' Retirement System of Louisiana; Act 116 of 1910, Sections 5-9, Teachers' Retirement Fund of New Orleans; Act 124 of 1946, Section 4, LSA-R.S. 17:901, Louisiana School Employees Retirement System; Act 282 of 1946, Section 12, LSA-R.S. 17:1111, Orleans Parish School Employees' Retirement System; Act 56 of 1956, Sections 3 and 4, LSA-R.S. 16:1021-1034, District Attorneys' Retirement System; Act 51 of 1950, Sections 5 and 6, LSA-R.S. 13:935, 13:936, Clerks of Court Retirement and Relief Fund; Act 126 of 1946, Section 4, LSA.R.S. 42:571-574, State Employees' Retirement *594 System; Act 189 of 1973, Section 1, as amended by Acts 111 of 1974, Municipal Police Employees' Retirement System. We further note that free retirement credit has been occasionally given for military service. See Act 126 of 1946, Section 2(8), (17), Section 4(6), before amended by Act 365 of 1954.
Appellee Board and Intervenors contend that the instances in which credit was given without contribution was in each case credit for services rendered prior to formation or existence of the system involved and that Act 3 of 1971 did not create a new system but merely merged two existing systems.
We commence our interpretation of subject statute by noting that legislation providing pension systems must be liberally construed in favor of the intended beneficiaries. Maillet v. Board of Trustees, Teachers' Retirement System, 248 La. 964, 183 So.2d 321; Miller v. City of Shreveport, La.App., 90 So.2d 565. Accordingly, any ambiguity in such a statute must be resolved in favor of the persons intended to be benefited thereby.
The primary rule of statutory construction is that of legislative intent, meaning the courts must endeavor to ascertain the reason and spirit of the law, or the cause which induced the legislature to enact the law. LSA-C.C. art. 18.
In determining legislative intent, the words of an act are to be understood in their usual signification and in accordance with the general and popular use of the words. LSA-C.C. art. 14.
Acts of the legislature are presumed constitutional and the party who asserts unconstitutionality bears the burden of proof. Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400.
A law must be construed as a whole. Every part of a statute must be given effect where such a result can be reasonably achieved. It cannot be presumed that the legislature enacted meaningless clauses and phrases. Houghton v. Hall, 177 La. 237, 148 So. 37.
We agree with Appellant's contention that the hereinabove quoted last sentence of Section 2, Act 3 of 1971 would be rendered meaningless if given the interpretation adopted by the trial court. It appears that by use of the word "retainer", the legislature intended to include persons other than employees in the ordinary sense of the term. The statute declares unequivocally that such persons shall be members of the State System with full credit for all previous service as employees of the Orleans Board. No qualification is imposed on the membership thus conferred, no requirement is made for contributions by such employees for the service credit thus granted. Significantly, we note that the opening sentence of Section 2, Act 3 of 1971, provides that all members of the Orleans System, who are merged with the State System, shall be subject to all laws and rules and regulations relating to the State System. The last sentence of that same Section, which confers the membership in dispute herein, does not recite that these latter memberships shall be subject to all laws and rules relating to the state system. It would thus appear the legislature intended to differentiate in this regard.
The record discloses that Appellant and two other employees of the Orleans Board are the sole possible beneficiaries of the disputed statutory provision. To hold that the legislature did not thereby intend to confer privileges upon Appellant would emasculate and render absolutely null the entire last sentence of Section 2 of subject act. To require contribution upon Appellant's part would entail an insertion of words and phrases into the Act which the legislature saw fit to exclude.
We find no merit in the argument that Appellant's inclusion will erode benefits due other members of the State System and place financial soundness of the State *595 System in jeopardy. The soundness of such a system is a matter of legislative discretion since it is the legislature which creates the system and contributes thereto pursuant to constitutional authorization. Presumably the legislature shall make whatever contribution required to guarantee benefits payable to any member, retiree or beneficiary, as mandated by Article 10, Section 29(A) of the Louisiana Constitution of 1974.

RAISING CONSTITUTIONALITY IN A MANDAMUS PROCEEDING
We agree with Appellant's basic contention that, as a general rule, a public officer or agency charged with a statutory duty of a ministerial nature is without right or interest to question the constitutionality of the statute establishing such duties as a defense to a mandamus proceeding to compel their performance. Summerell v. Phillips, 258 La. 587, 247 So.2d 542; Smith v. Flournoy, 238 La. 432, 115 So.2d 809; Dore v. Tugwell, 228 La. 807, 84 So.2d 199; State ex rel. New Orleans Canal & Banking Co. v. Heard, 47 La.Ann. 1679, 18 So. 746.
However, Appellant fails to note the exception recognized in Dore v. Tugwell, above, wherein the following appears:
"(t)he doctrine of these cases should not be confused with the decisions holding that a public officer, as defendant in a mandamus proceeding, may claim that the interpretation placed on a statute by a particular relator, seeking performance, would be unconstitutional if construed to cover such relator. The latter ruling is distinguishable since the public officer does not contend that the statute is unconstitutional, but merely opposes the interpretation sought by the relator as unconstitutional."
Insofar as Appellee Board is concerned, we find that the present matter falls within the ambit of the above quoted language from Dore v. Tugwell, above.
We additionally observe that the jurisprudence has repeatedly sanctioned the right of an intervenor with a real and direct interest in the subject matter of litigation to assert invalidity of a statute. Dore v. Tugwell, above; State ex rel. Tulane Homestead Association v. Montgomery, 185 La. 777, 171 So. 28; State ex rel. Huggett v. Montgomery, La.App., 167 So. 147. From the foregoing, we conclude the trial court properly allowed Intervenors to raise the issue of constitutionality in this instance.

CONSTITUTIONALITY OF ACT 3 OF 1971
Appellees suggest that Appellant's proposed interpretation of subject statute would render the law unconstitutional. It is argued that as thus interpreted the body of the act is broader than its title and therefore violative of La.Const.1921, Article 3, Section 16, and also violative of La.Const.1974, Article 3, Section 15, which provide that an act shall have but one object and a title descriptive thereof. Appellees contend the Title of Act 3 does not mention the purpose of amending the law concerning the Orleans System to include persons not formerly members of that system, and neither does its title show intent to allow nonmembers of the Orleans System to join or receive benefits from the State System. Therefore, it is suggested that the body of the Act is broader than its title, and consequently, that the statute is unconstitutional.
The constitutional provision in question does not require the title of an act to be an index of its contents, but only that the object of the act be expressed in general terms. All things proper and necessary to carry out the general intent and purpose of the act are deemed within the scope of its title. The applicable constitutional provision is deemed violated only when the variance in the provisions of the act is palpable and totally irreconcilable with its object as expressed in the title, or where title and *596 body encompass distinctly different subjects. Parish of Jefferson v. Louisiana Department of Corrections, 259 La. 1063, 254 So.2d 582, and cases therein cited.
The title of Act 3 of 1971 reads as follows:

"An Act
To merge and consolidate the Orleans Parish Teachers' Retirement System into the State Teachers' Retirement System, effective July 1, 1971; to provide for transfer of records, assets, liabilities, obligations and service credits; to provide rights, privileges and benefits of former members of the Orleans Parish Teachers' Retirement System in the State Teachers' Retirement System shall be the same as all other members of the latter system; to provide for effectuation of the consolidation by the boards of trustees of the two systems, and otherwise to provide with respect to said merger and consolidation."
We find that the challenged provision falls within the general object of subject statute which is to merge two retirement systems. Inclusion of the employees of the Board of Trustees of one of the merged systems as members of the newly created system is not at variance or totally incompatible with the stated object of the Act which effectuates the merger.
Appellees also challenge the constitutionality of Act 3 of 1971 on the ground it violates La.Const.1921, Article 4, Section 12, and Article 12, Section 23. Article 4, Section 12, pertinently provides as follows:
"The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporations, public or private; . . . ."
The above provision must be construed in conjunction with Article 12, Section 23, which mandates the legislature to provide a retirement fund for aged and incapacitated teachers and school employees. Such authority necessarily includes establishment of an administrative agency to operate the system, the employees of which administrative agency could obviously not be school teachers or school employees. We find that inclusion of such administrative employees within the system is reasonably within the scope of the constitutional authority to establish the system and provide for its administration by full time employees. This the legislature has done in enacting LSA-R.S. 17:571(23), as amended by Act 589 of 1972, which grants employees of the State System membership in said system. If the legislature may grant membership in the State System to the employees of that system, it may also extend such membership to the employees of another system merged therewith, as was done in this instance. Moreover, the legislative contribution to retirement systems is not a grant of public funds within the proscription of La.Const.1921, Article 4, Section 12, because La.Const.1921, Article 12, Section 23, expressly authorizes creation of the State System and necessarily implies contributions by the state which are in the nature of additional compensation benefits for members of the system. We deem Act 3 of 1971 constitutional.

EFFECT OF APPELLANT'S MEMBERSHIP IN THE DISTRICT ATTORNEYS' RETIREMENT SYSTEM
Appellee Board and Intervenors note that Appellant asserts and acknowledges a contributing membership in the District Attorney's Retirement System as set forth in LSA-R.S. 16:1001-1112. It is also noted that Section 1021(3)(a), above, provides that any member of the District Attorneys' System, who on the date of becoming a member is also a member of another system, shall cease to be a member of such other system, with a full return of contributions to such other system, and shall be a member of the District Attorneys' System with full credit for all prior service.
*597 It is suggested that this legislation applies to Appellant and that he cannot be a member of both the State System and District Attorneys' System.
Next, Appellee Board and Intervenors point to Act 745 of 1975, which provides that any person who by virtue of serving as secretary-manager of the District Attorneys' Retirement System is a member of said system, and who heretofore served at least twenty-two years as secretary-treasurer of the Orleans Parish Teachers' Retirement System, has the option to continue membership in the District Attorneys' System or to receive in lieu thereof such benefits as he is entitled to from the State System. The option to elect extends to November 1, 1976. It is suggested that this latter legislation indicates intent that Appellant must elect between membership in the District Attorneys' System and the State System.
We pretermit consideration of the effect of Section 1021(3)(a), above, and Act 745 of 1975, because we deem premature all such issues as may be thereby presented. Whether Appellant is prohibited from claiming benefits under two retirement systems can only be considered at such time as Appellant may claim benefits under a second system. We note in passing, however, that it would appear that Act 745 of 1975 has no application to Appellant because the statute applies to one having at least twenty-two years service as Secretary-Treasurer of the Orleans System. The record in this instance, namely, Groves' own testimony, is to the effect that he became Secretary-Treasurer of the Orleans System in February, 1950, and retired October 1, 1971, a period of less than twenty-two years. If the legislature intended Act 745, above, to apply to Appellant, the legislature evidently mistook his service as actuary to the Orleans System, commencing in 1948, for service as Secretary-Treasurer, but failed to give him credit for the actuarial service rendered between 1948 and February, 1950.

AMOUNT OF BENEFITS DUE APPELLANT
For at least three years prior to retirement until June 30, 1970, Appellant was paid $250.00 per month as actuary and $750.00 per month as secretary, or a total of $1,000.00 monthly, except for the period January 1, 1969 to June 30, 1970, during which he received $625.00 monthly as secretary. From July 1, 1970 through June 30, 1971, Appellant received $450.00 monthly as actuary and $750.00 monthly as secretary, or $1,200.00 per month. For the final three months of his employment, July 1, 1971 through September 30, 1971, Appellant was paid a total of $2,500.00 per month.
The State System act provides that retirement benefits shall be computed upon the retiree's three best average years of earning. Upon Appellant's retirement his pension was computed on the above indicated income for the last three fiscal years of his employment, namely, July 1, 1968 through June 30, 1971, and therefore did not include the last three months of employment at $2,500.00 per month. Appellant maintains this was error, and that his benefits should be recomputed on the basis advocated; that he should have judgment for the difference due during the period of former payments, and that resumed payments should be increased accordingly.
The record discloses that the State System has adopted the policy of computing benefits on the basis of the fiscal year irrespective of the time of actual retirement. We find nothing in the retirement act which prohibits such a determination. It is also obvious that in the administration of the act, the State Board is vested with some discretion. It is shown that the method used in Appellant's case is the same as that employed with regard to all other retirees. Appellant has shown no discrimination, no abuse of the State Board's discretion, and consequently no ground for complaint or relief.
*598 Lastly, Appellant contends his pension should be fixed on an income of $750.00 per month as Secretary to the Orleans Board for the period January 1, 1969 to June 30, 1970, instead of $625.00 as determined by Appellee Board. Appellant argues that although he received checks of only $625.00 per month as Secretary during the period in question, his pension should be computed on a salary basis of $750.00 for this interim because he agreed to a reduction of his own salary for the benefit of his staff.
We find no merit in this argument. The record does disclose that Appellant magnanimously agreed to this $125.00 monthly deduction in his salary as Secretary to provide a raise for his employees. Nevertheless, Appellant was paid a salary of only $625.00 for the period in question. Having voluntarily consented to the reduction for whatever reason, Appellant may not claim the benefit of income he did not receive and was not paid.
Thusly determined, Appellant's benefits amount to $273.83 monthly, or a total of $13,417.67 from October 1, 1971 through November 1, 1975. It is conceded that Appellant, if entitled to benefits, is entitled to an additional $400.00 cost of living lump sum payment authorized by Act 107 of 1973, making a total of $13,817.67 due as of November 1, 1975. Appellant has been paid benefits aggregating $8,359.83, leaving a balance due him of $5,457.84 as of November 1, 1975.
It is ordered, adjudged and decreed that the judgment of the trial court be reversed and there be judgment herein in favor of Appellant, W. H. Groves, against defendant, The Board of Trustees of the Teachers' Retirement System of Louisiana, decreeing plaintiff Groves a member of the State System as of October 1, 1971, entitled as such to monthly retirement benefits of $273.83 from October 1, 1971, plus all such additional benefits as have heretofore or shall hereafter be granted members of said State System.
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff Groves and against defendant State Board in the sum of $5,457.84, representing the difference between retirement benefits paid and retirement benefits due plaintiff for the period October 1, 1971 through November 1, 1975, together with legal interest on each monthly installment or other benefit, from due date, until paid.
It is further ordered, adjudged and decreed that defendant State Board recommence payments due plaintiff Groves at the rate hereinabove indicated, commencing December 1, 1975; all costs of these proceedings for which defendant State Board may be legally assessed to be paid by said State Board.

Reversed and rendered.