90 So.2d 565 (1956)
Luther D. MILLER, Plaintiff-Appellee,
v.
CITY OF SHREVEPORT et al., Defendants-Appellants,
Jack P. F. Gremillion, Attorney General of the State of Louisiana, Third-Party Defendant-Appellee.
No. 8548.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1956.
Rehearing Denied November 29, 1956.
Writ of Certiorari Denied January 21, 1957.
*566 William L. Murdock, James W. Hammett, Robert E. Eatman, Shreveport, for appellants.
Booth, Lockard, Jack & Pleasant, Shreveport, for appellee.
Ferdinand A. Cashio, Sp. Asst. Atty. Gen., Shreveport, George M. Ponder, First Asst. Atty. Gen., Baton Rouge, for third-party appellee.
GLADNEY, Judge.
This action was brought by Luther D. Miller under the Uniform Declaratory Judgments Act, LSA-R.S. 13:4231-4246, for the purpose of securing a decree declaring the petitioner to be entitled to retirement in the classification of Chief of Police, effective December 1, 1954, and ordering his name to be placed on the Police Pension roll. Following trial there was judgment for plaintiff, and defendants, the City of Shreveport and the Board of Trustees of the Police Pension and Relief Fund, have appealed.
Undisputed facts disclose Luther D. Miller served as a member of the Shreveport Police Department from March 9, 1926, until November 26, 1951, at which time he retired and was placed on the pension rolls in compliance with the statutory provisions and rules and regulations in effect at that time, which entitled him to retirement after twenty years of consecutive service. In the early part of the year 1954 the office of Chief of Police of the City of Shreveport was vacated by reason of the fatal shooting of Chief E. G. Huckabay, who was killed in line of duty, and the then Commissioner of Public Safety, A. B. Morris, sought the return of Miller to the Police Department of the City of Shreveport. Accordingly, on March 9, 1954, appellee was employed as Chief of Police and thereafter passed mental and physical examinations required for that position. His appointment was officially approved by the Civil Service Board and the City Council of the City of Shreveport. Appellee served in this official capacity until December 1, 1954, at which time he resigned pursuant to a request by the newly elected Commissioner of Public Safety. During Miller's service as Chief of Police, after March 9, 1954, pension payments which he had been receiving were discontinued and he began regular contributions to the pension fund in line with his position and salary as Chief of Police. After his resignation on December 1, 1954, Miller applied to the Board of Trustees of the Police Pension and Relief *567 Fund for a pension based on the salary in effect as of the date of his late retirement. When this request was refused, this action was brought.
Appellee's demands are opposed on several grounds, enumerated in the following order:
(1) That plaintiff, due to his age, was ineligible for a new membership in the fund, and was therefore, ineligible for retirement as Chief of Police;
(2) That plaintiff was ineligible for retirement as Chief of Police because his employment in that capacity was not of sufficient duration;
(3) That if the alteration of plaintiff's prior pension status is predicated on Act 248 of 1954, LSA-R.S. 33:2240, said act would unconstitutionally divest interested parties of vested rights; and
(4) That the Board of Trustees of the Police Pension and Relief Fund has never recognized a change in plaintiff's established pension status.
The foregoing objections to the relief sought by appellee were determined adversely to appellants and constitute the principal assignments of error charged against the decision appealed to this court.
The first contention made by appellants is that at the time appellee was employed as Chief of Police he was ineligible for pension benefits due to his age of forty-nine years. The Pension and Relief Fund maintained by the City of Shreveport for the benefit of its Police Department was originally provided for in Act 290 of 1914. This statute has been amended on numerous occasions and was incorporated in the Louisiana Revised Statutes of 1950. See: LSA-R.S. 33:2221-2242. An amendment to Act 290 of 1914, Act 343 of 1940, § 1, LSA-R.S. 33:2240, provided:
"Persons eligible for appointment to the police department shall be between the ages of twenty-one and thirty-five years. No person shall be employed in the department without first submitting to a physical examination by the municipal physician. If not pronounced physically fit by the physician, the applicant shall not under any conditions be eligible for benefits from the fund. The physician shall make a written report of each applicant examined to the commissioner of public safety and to the board immediately upon examination.
"This Section does not apply to those persons who were regular members of the department on July 31, 1940."
It is conceded that Luther D. Miller was a regular member of the Police Department of the City of Shreveport on and prior to July 31, 1940, but it is argued no provision was made for re-employment of terminated employees after the age of thirty-five years, and, therefore, because Miller was over that age on March 9, 1954, he was ineligible for any change of his existing pension status.
The express provision that the section of the statute has no application to those persons who were regular members of the department on July 31, 1940, would seem to be sufficient to dispose of appellants' contention. They would construe the act as excluding terminated employees who had reached the age of thirty-five years, even though such employees were regular members of the department on July 31, 1940. This view calls for a narrow construction which we think should not be adopted.
"Laws creating the right to pensions must be liberally construed with the view of promoting the objects of the law-making body; and their force and effect are not to be confined to the literal terms of the statute." 70 C.J.S., Verbo Pensions, § 2, pp. 425, 426. Doubt, if there be any, as to the construction of LSA-R.S. 33:2240 was entirely removed by Act 248 of 1954, which reads in part:

*568 "Persons eligible for first appointment to the police department shall be between the ages of twenty-one and thirty-five years at the time of such original appointment, and shall be subject to re-employment after the age of thirty-five years. * * *"
Appellants take the position that the 1954 statute should be construed so as to have prospective effect only since it was not in effect at the time of Miller's employment on March 9, 1954, and, therefore, his status is governed by the legislation adopted in 1940.
In our opinion Act 248 of 1954 was remedial in nature and is, therefore, entitled to a liberal construction. The law is so stated in 50 American Jurisprudence, Verbo Statutes, § 392, pp. 415, 416:
"It is a general rule of law that statutes which are remedial in nature are entitled to a liberal construction, in favor of the remedy provided by law, or in favor of those entitled to the benefits of the statute. This is true of a curative statute having a remedial purpose, or statutes seeking the correction of recognized errors and abuses, remedying defects in earlier acts, or implying an intention to reform or extend existing rights." 50 Am.Jur. Verbo Statutes, § 392, pp. 415, 416.
Statutes which are purely remedial in their nature are not subject to the rule that laws are presumed to operate prospectively and not retrospectively. Oil Well Supply Company v. Red Iron Drilling Company, 1946, 210 La. 222, 26 So.2d 726. Such statutes will be given a retroactive effect in the absence of language showing contrary intention. General Motors Acceptance Corporation v. Anzelmo, 1953, 222 La. 1019, 64 So.2d 417. See also Dowie v. Becker, 1921, 149 La. 160, 88 So. 777 and Bowen v. Board of Trustees of Police Pension Fund, La.App.1954, 76 So.2d 430. As pointed out in Bowen v. Board of Trustees of the Police Pension Fund, supra, it is essential for the legislature to alter the regulations and requirements of the pension system to keep abreast with actuarial science. Such legislation is, of course, remedial in character.
We are of the opinion that Miller was not disqualified by LSA-R.S. 33:2240 because he was over thirty-five years of age when he re-entered the service on March 9, 1954.
Secondly, it is argued that the employment of appellee as Chief of Police was not of sufficient duration to comply with a resolution of the Board of Trustees which became effective December 12, 1946. The resolution provided:
"That in the future, no member of the Department should be retired in any classification under which he had not been in the employment of the same for a period of six months prior to retirement, and not then until the applicant has been duly certified by the Civil Service Board as an officer of the Police Department."
Although unquestionably Miller was employed as Chief of Police on March 9, 1954, and served as such until his resignation on December 1, 1954, a period of eight months and twenty-one days, it is argued that his regular appointment as Chief of Police did not become effective until June 7, 1954, when appellee was formally and regularly appointed as Chief of Police and the appointment approved by the members of the City Council. We do not so interpret the resolution which only prohibits retirement in any classification except where the employment therein has been for six months and the applicant has been duly certified by the Civil Service Board. In the instant case Miller had commenced his employment on March 9, 1954, and subsequent thereto had passed all requirements to render him eligible for continuing in that employment. Had he been disqualified for failing to meet any of the conditions, of course, his employment could necessarily *569 have been terminated. It is our conclusion that Miller was employed as Chief of Police for more than six months prior to the termination of his employment as Chief of Police.
Thirdly, appellants argue that when Miller severed his employment with the Police Department in 1951 and was thereinafter the recipient of a pension from the Board of Trustees based upon his status as of that time, his rights became vested and could not thereafter be changed. Defendants allege in paragraph twenty-five of their answer:
"Now pleading in the alternative, your appearers aver that if LSA-R.S. 33:2221 to 2242, Act No. 290 of 1914, as amended, or any portion thereof, authorizes a change in the amount of pension benefits received by a pensioner, upon his employment and subsequent separation from the department, from an amount based upon the salary he received at the time of his first retirement to an amount based upon the salary he received at the time of his second separation, then, and in that event, said act is unconstitutional in that it divests the vested rights of the parties and is contrary to and violative of the provisions of Article IV, Section 15, of the Constitution of the State of Louisiana of 1921, LSA and Article I, Section 10 of the Constitution of the United States."
In compliance with LSA-R.S. 13:4241 the Attorney General of the State of Louisiana was made a party to this action and appearing herein in response to the above paragraph of the answer has denied that the statute, as amended, or any portion thereof, is unconstitutional, and has cited appropriate authorities to sustain his position.
In Bowen v. Board of Trustees of The Police Pension Fund, La.App.1954, 76 So. 2d 430, 435, one of the questions raised was whether an increase in the term of service required under the Police Pension and Relief Fund statute applicable to New Orleans violated State and Federal Constitutions relating to due process, vested rights, and equal protection. When plaintiff, Bowen, joined the police force, the statute required only sixteen years of active continuous service to qualify for benefits. In 1944 by Legislative enactment the term of active continuous service was increased to twenty years. The Orleans Court of Appeal affirmed a judgment denying relief to plaintiff who made application for retirement pension upon completing only sixteen years of such service. He asserted his rights were vested and fixed and could not be altered by legislative changes. The court rejected this assertion, declaring the statute did not violate the above constitutional provisions. The decision quoted approvingly from Talbott v. Independent School District, 230 Iowa 949, 299 N.W. 556, 137 A.L.R. 234, to the effect:
"`"But underlying all retirement systems of the class we are now discussing is the legislative object, as well as that of the member employee, that a substantial reserve be built up so that the actuarial soundness of the plan cannot be questioned. This factor is an important one in the relation between state, city, and county, as employer, and the employee member, with respect to retirement pay. If a direct attack on it, such as has been made in the present case, is justified, or a weakness in it manifested through actual trial is found to exist, the remedy or relief rests clearly within the relation between employer and employee contemplated by the legislative system for retirement pay. The Legislature may from time to time, within the confines of that established relattion, alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibres in any way it sees fit. Changes in details, such as length of service required, contributions needed, and age *570 requirements, to keep the fund on sound actuarial practices, are essential. Flexibility in component parts is a paramount necessity to guard against changed conditions and to permit keeping abreast with actuarial science."'" (Emphasis supplied.)
Appellants cite in support of their petition, Meyer v. Board of Trustees, 199 La. 633, 6 So.2d 713, but this case is not authority for this proposition for it did not involve the validity of a change in pensioners' rights. The only issue in that case was whether a clause in the statute denying appeal to the courts from a ruling of the Board of Trustees was constitutional. Such a provision was held unconstitutional and the court reversed the Board of Trustees on a question of fact allowing recovery of a pension by the widow.
It is entirely wholesome and necessary to the proper operation of pension and retirement funds that legislative changes be permitted in order to keep the fund on sound actuarial practices and without which the continuity of the system would be most uncertain. We hold that Act 248 of 1954 was remedial legislation and, therefore, is constitutional and the contentions to the contrary made by appellants are not well founded.
Finally, appellants seem to contend plaintiff is ineligible to participate in the benefits of the pension fund because he has never been approved by the Board for participation. The evidence discloses that when plaintiff became Chief of Police on March 9, 1954, payments to him of the benefits as formerly received by him from the pension fund ceased, and thereafter there was regularly deducted from Miller's pay as Chief of Police, and remitted to the Board of Trustees, the required contribution in pay, predicated upon employment as Chief of Police. Although it was shown it was the practice and apparently the duty of the Chief of Police to make up the list of those new members who became eligible for the pension fund, and such a list with deductions was reported by Miller, the fact remains that the Board of Trustees accepted the deductions without making any effort to question the indicated change in Miller's pension status. Miller was clearly entitled to a change in his pension status and fully met all requirements to obtain such. Thus, it would appear that the failure of the Board to take any affirmative action with reference to his status is not controlling.
Appellee urges strongly a special plea of estoppel which we surmise the trial court found unnecessary to pass upon. It is correctly stated that the evidence conclusively shows Miller passed all mental and physical tests required for entering the service, and likewise his status was approved by the Civil Service Board. He made all of the required payments and contributions to the Police and Pension Fund. Notwithstanding the aforementioned acts, the Board of Trustees of the Police Pension and Relief Fund did not act upon the pension status of appellee. This failure to take action might be construed as a waiver by the Board of its right to object, but we prefer not to favor an estoppel herein, but rather to rest our decision on the grounds heretofore mentioned.
It follows from our findings that plaintiff was eligible for re-employment when he was called back into service and that having met all the conditions and requirements for reinstatement upon the pension rolls and retirement upon a pension status, in conformity with his employment, the judgment from which appealed should be and is hereby affirmed.