HAMLIN, Justice.
 

 In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, La.Const. of 1921) we directed Certiorari to the Court of Appeal, Third Circuit, in order that we might review its judgment on rehearing which rejected plaintiff’s demands for disability retirement or benefits as set out in LSA-R.S. 17:641, Option 2, but reserved to her any and all rights which she has or may have against defendant for other benefits or for the refund of contributions. 176 So.2d 7; 248 La. 379,178 So.2d 661.
 

 The undisputed facts herein are to the effect that Gaston P. Maillet, a school teacher in the State of Louisiana from 1931 to the time of his death, was and had been for many years a member of the Teachers’ Retirement System of Louisiana (hereinafter referred to as Retirement System) with an accumulated contribution of over $8,000.00.
 

 During October, 1962, while teaching at the Marksville High School, Maillet became ill with cancer.
 
 [1]
 

 
 *967
 
 On December 21, 1962, Maillet executed an Application for Disability Retirement, wherein he requested that his retirement allowance become effective “at the earliest possible cate” under the provisions of Option 2, LSA-R.S. 17:641, which provides: “Upon his death, his reduced retirement allowance shall be continued throughout the life of and paid to any person he shall designate in a written instrument acknowledged and filed with the board of trustees at the time of his retirement.” He designated his wife, Nettie R. Maillet, as his beneficiary to receive the benefits at his death. Attached to the application was a Statement of Disability, also dated December 21, 1962 and signed by Maillet, which recited in part:
 

 “Regarding the nature of the disability which I claim incapacitates me for further service as Agriculture teacher — Marksville High School and the dates upon which it will be possible for me to appear for medical examination permit me to state as follows: I am hospitalized and due to my physical condition, am unable to appear for medical examination. Please verify my condition through my doctor.
 

 “I believe I am incapacitated for further service in Louisiana schools because of a cancer condition.
 

 “My family physician, Dr. Albert M. Abramson, of Marksville, Louisiana, advises me that I have cancer and am unable to perform my duties as a teacher, and I authorize my physician to make report to the physician or physicians designated by you regarding my condition.”
 

 On January 9, 1963, H. G. Robinson, Secretary-Treasurer of the Retirement System, addressed a communication to F. L. Couvillion, Supt, Avoyelles Parish Schools, Marksville, .Louisiana, in which he stated that his Medical Board had recommended to his Board of Trustees that Maillet’s application for disability retirement be approved. In order that the report to the actuary could be completed, he requested that Couvillion complete a form with respect to termination. Couvillion completed the form on January 11, 1963, stating that Maillet’s service would terminate on January 19, 1963 and that his last date of pay would be January 19, 1963. The Avoyelles Parish School Board paid Maillet through January 19, 1963, and he contributed to the
 
 *969
 
 Retirement System Fund to and including that date.
 

 On January 14, 1963, Robinson wrote Maillet “that the report of our Medical Board recommends to our Board of Trustees that your application for disability retirement be approved. This means that the Board of Trustees will retire you on disability retirement effective January 20, and as soon as your application has been completely processed you will receive your first retirement check.”
 

 Maillet died on January 23, 1963.
 

 After demand made by Chris J. Roy, attorney for Mrs. Maillet, on May 31, 1963, Mr. Roy was notified on June 10, 1963 that Mrs. Maillet was ineligible for benefits under Option 2, supra, and that she was eligible to receive only the accumulated contributions in the annuity fund because her husband had not lived thirty days following his retirement, which opinion was based upon an interpretation of LSA-R.S. 17:641, infra.
 

 Plaintiff filed the instant suit on February 19, 1964. The trial court rendered judgment in her favor, awarding her retirement benefits in the amount of $176.83 monthly, together with 5% interest on each monthly payment due commencing January 20, 1963. The Court of Appeal affirmed the judgment of the trial court; on rehearing, it rendered the judgment'herein under consideration.
 

 Plaintiff contends that the Court of Appeal erred:
 

 1. By placing a strict interpretation on the Louisiana Teachers Retirement Statutes, which are remedial legislation.
 

 2. By concluding that Gaston P. Mail-let could not retire for disability under R.S. 17:637 until 30 days after application, when, as a matter of law, the only logical interpretation inferred from Sec. 637 is that retirement is retroactive to the date of application.
 

 3. By concluding that plaintiff was not entitled to the benefits selected by her deceased husband, because he did not live 60 days from his application for retirement, when no such delay is expressed in the statutes.
 

 4. By concluding that the case of St. John v. Board of Trustees, La. State Emp. Retire. S. [La.App.], ISO So.2d 328, was not applicable to the issues in the instant case.
 

 5. By basing its opinion on cases of foreign jurisdiction which are in-apposite herein, because they revolved around service retirements as opposed to disability retirement, and secondly, because the conclusions reached therein were erroneous.
 

 
 *971
 
 Defendant-respondent contends that the effective date of Maillet’s retirement was January 20, 1963, and that since M!r. Maillet died on January 23, 1963, or within thirty days of his retirement, the only benefits payable are the accumulated contributions provided in LSA-R.S. 17:640. Defendant further argues that under the facts of this case' Maillet’s retirement could not be effective prior to January 20, 1963, because he sought retirement beginning January 20, 1963 despite the fact that his application was submitted on December 21, 1962. Defendant still further contends that the statute under consideration is free and clear of all ambiguity, and that it is the duty of this Court to construe statutes as they are written — the letter of a statute which is free and clear from all ambiguity is not to be disregarded under the pretext of pursuing its spirit.
 

 LSA-R.S. 17:637 provides:
 

 “Upon the application of a member in service or of his employer, any member who has five or more years of creditable service may be retired by the board of trustees, not less than thirty nor more than ninety days following the date of filing such application, on a disability retirement allowance, provided that the medical board after a medical examination of the member, certifies that the member is mentally or physically incapacitated for the further performance of duty,
 

 that the incapacity is likely to be permanent, and that the member should ■ be retired.”
 

 LSA-R.S. 17:641 provides in part:
 

 “With the provision that no optional selection shall be effective in case a beneficiary dies within thirty days after retirement, and that such a beneficiary shall be considered as an active member at the time of death, until the first payment on account of any benefit becomes normally due, any member may elect to receive his benefit in a retirement allowance payable throughout life, or he may elect to receive the actuarial equivalent at that time of his retirement allowance in a reduced retirement allowance payable throughout life with the provisions that:”
 

 • On rehearing, the Court of Appeal was of the opinion that the thirty-day period provided in LSA-R.S. 17:641 was not intended to be merely a delay for administrative purposes, as it had previously decided, but that instead the purpose of such delay was to minimize or to prevent “death bed” applications from being effective. The Court stated:
 

 “Under the provisions of LSA-R.S. 17:641, the optional selection made by him would have
 
 become
 
 effective thir-ty days later, or on February 19, 1963, had he [Maillet] lived that long. He
 
 *973
 
 died within that thirty-day period, however, so his death occurred before the optional selection became effective, and under the express provisions of LSA-R.S. 17:641, he must be considered as having been an ‘active member’ of the system at the time of his death.”
 

 The instant case presents a question which is res nova in Louisiana. We are not bound by the decisions of other states in its solution, although our decision might be contrary to their rulings. See, C H F Finance Company v. Jochum, 241 La. 155, 127 So.2d 534; Cf. J. R. Watkins Company v. Floyd, La.App., 119 So.2d 164.
 

 H. G. Robinson, Secretary-Treasurer of the Retirement System, who at the time of trial had held his position for some ten years, testified that his primary responsibility was to administer the provisions of the Teachers’ Retirement Law. He stated (in an attitude of complete cooperation) that no one had ever contested the administrative rulings of the Board through him as Secretary-Treasurer. With respect to the instant matter, he testified:
 

 “Q. Just one more question * * * which bores on a question of law of course, actually the * * * position taken by the Louisiana Teachers Retirement System * * * is that Gaston Maillet applied for disability retirement * * * on December 21, 1962?
 

 “A. That’s right.
 

 “Q. That this disability retirement * * * could not become effective until thirty days?
 

 “A. That is right.
 

 “Q. Which would have been * * * January 20, 1963 * * * that thereafter the option which he selected at the time he applied for retirement * * * could not become effective * * * until another thirty days * * * elapsed from the day that he was retired for disability namely Jánuary 20, 1963?
 

 “A. That’s correct.
 

 “Q. In other words, Mr. Maillet had to live * * * sixty days from the time he applied * * * for disability retirement before * * any optional selection * * *
 

 would become effective?
 

 “A. That’s my understanding. That’s a policy that has been followed by the Board * * * for twenty eight years.
 

 “Q. And that’s the policy that has never been tested in Court?
 

 “A. That is correct.”
 

 George B. Buck, a New York consulting actuary of renown, gave the following answers to direct interrogatories:
 

 
 *975
 
 “ * * * The 30 days required for the election of an optional plan of retirement to become effective is included in the law for a distinct actuarial purpose.' Optional benefits provide a member with the opportunity to select against the system if he knows he is in poor health and likely to die. Past experience has shown that if an option can be selected without a waiting period, the actuarial cost to the employer can be very high because of such selection. The 30 day waiting period after retirement allowance becomes effective tends to eliminate the greatest part of such selection and this is the reason it is included. While the 30 to 90 day period specified in R.S. 17:637 and other sections of Title 17 was intended principally for administrative convenience, the 30 day period specified in R.S. 17:641 was solely for the actuarial purpose indicated. In setting the 30 day period in R.S. 17:641, account was taken of the fact that when added to the minimum specified in R.S. 17:637, etc., a minimum period of 60 days must expire between the time of the member’s application for retirement and the date upon which his optional election would become effective. Had there been no minimum period specified in the latter sections, a longer period would have had to be specified in R.S. 17:641 to accomplish the same actuarial purpose.
 

 “ * * * It should be noted that R.S. 17:641 provides that the optional allowance shall be the ‘actuarial equivalent’ of the normal benefit. A 30 day waiting period would be the minimum period found in other systems. A common provision, particularly where retirement benefits are provided through commercial insurance carriers, is to require the election of an option at least 5 years prior to its effective date unless evidence of good health is submitted at the time of election.”
 

 Lyden Couvillion, Superintendent of the Schools of the Avoyelles Parish School Board, who handled Maillet’s application for retirement and sent a telegram to the Retirement System on December 21, 1962 informing it of Maillet’s application, testified that Gaston Maillet had taught six days during November, 1962 and five days during December, 1962, the last day being December 7th, and that he had not taught at all in the month of January, 1963. Couvillion gave the following pertinent testimony:
 

 “Q. Mr. Coulvillion, would you tell the Court why Gaston Maillet * * * was paid his full salary for the month of November 1962, when he actually taught only six days?
 

 
 *977
 
 ‘A. Gaston Maillet, was paid his full salary which was * * * in excess * * * of the days that we would have been allowed his accumulated sick leave. It’s * * * it’s permits his situation * * * where-by School Boards may do such a thing, it has been done * * * in just a few instances, in the past and those instances were of cases similar nature to Mrs. Maillet where they were encountering large hospital bills and it was the feeling of the Board that * * * those particular times that they needed the financial help, shall we say.
 

 “BY THE COURT:
 

 “In other words, that was an accumulation of sick leave that he had coming.
 

 A. No. * * * no sir. It was in excess of his accumulation. Now, at one point, one expired and the other began * * * I didn’t really ever check because I knew what we were going to do and I
 
 *
 
 * *_
 

 ‘Q. And that answer applies to the month * * * of December when he taught five days * * * as well as the month of January when he didn’t teach at all.
 

 “A. It would apply certainly all in January and possibly all in December but * * * at least a part of it. * * * I would be sure.”
 

 An objection was sustained when Couvillion, as Superintendent of Education of Avoyelles Parish School Board, was asked whether he considered the payments “salary” or “gratuity.”
 

 We are well aware of the fact that actuarial science is intricate and constantly advancing; it requires almost mathematical genius for its solution. The Legislature must keep abreast with actuarial science, altering the regulations and requirements of its pension systems which grant retirement allowances. Miller v. City of Shreveport, La.App., 90 So.2d 565. However, legislation providing for pension systems is remedial (Miller v. City of Shreveport, supra), and must be liberally construed. 70 C.J.S. Pensions § 2, pp. 425-426. Cf. St. John v. Board of Trustees, La. State Emp. Retire. S., La.App., 150 So.2d 328. It is also to be especially noted that the majority of retirement allowances, usually termed pensions, are not gratuities; they are in the form of an annuity to which the employee has made substantial contributions. The instant Retirement System is no exception.
 

 Certainly agencies of government have to be protected by law in the assumption of
 
 *979
 
 risks'; Mr. Buck stated such in so many words, supra. Retirement systems have to be financially sound and permanent. Frauds have to be prevented. Thus, certain insurance policies have incontestable clauses, and LSA-R.S. 17:637, supra, requires particularly that a member must have five or more years of creditable service in order to be retired on a disability retirement allowance.
 

 Once a member of a retirement system has met the requirements of tenure, wé do not feel that it was the intention of the Legislature to deprive him of retirement and a retirement allowance because of death’s winning the battle of technical details. The essential factors for a disability retirement allowance herein are ten-' ure, application for retirement and a retirement allowance, and the granting of requests in not less than thirty nor more than ninety days after application.
 

 As previously stated, Maillet was actually and factually retired on December 21, 1962, when he applied for a disability retirement allowance. He had cancer and was unable to perform his duties as an agriculture teacher. He had over thirty years of teaching service for and in the State of Louisiana and had contributed over $8,000.00 to the Retirement System. Maillet was granted retirement and a retirement allowance effective January 20, 1963, notification being-given on January 14, 1963. January 20, 1963 was exactly thirty days after application, a conformity with LSA-R.S. 17:637, supra.
 

 “Statutes which are purely remedial in their nature are not subject to the rule that laws are presumed to operate prospectively and not retrospectively. * * * Such statutes will be given a retroactive effect in the absence of language showing contrary intention. * * * As pointed out in Bowen v. Board of Trustees of Police Pension Fund, supra, [76 So.2d 430] it is essential for the legislature to alter the regulations and requirements of the pension system to keep abreast with actuarial science. Such legislation is, of course, remedial in character.” Miller v. City of Shreveport, La.App., 90 So.2d 565. See, Talbot v. Trinity Universal Insurance Company, La. App., 99 So.2d 811. Cf. State v. Cleveland, 246 La. 668, 166 So.2d 267.
 

 The instant statute, which provides for teachers’ retirement ..and. is administered by the Retirement System, is, as stated supra, remedial legislation. The provisions herein under consideration operate retrospectively. We find that when the Retirement System’s Board of Trustees, acting through its Secretary-Treasurer, notified Maillet that his request for' retirement and a disability retirement allowance was granted and was effective' January 20, 1963, such action operated retrospectively and reverted back to December
 
 *981
 
 21, 1962, the day of application. We take the word “effective” to mean that the action which reverted back to December 21, 1962 came into being on January 20, 1963 and immediately reverted and became retrospective. Therefore, when Maillet died on January 23, 1963 thirty days had elapsed since December 21, 1963, and the provisions of LSA-R.S. 17:641 could not deprive his widow of her survivor benefits. We conclude that the instant provisions do not contemplate a mandatory sixty day waiting period between application for retirement and a disability retirement allowance and the operation of such, once the application is granted.
 

 Because the action of the Retirement System did not become retrospective to December 21, 1962 until January 20, 1963, we find that the judgment of the trial court granting plaintiff, the Widow of Gaston P. Maillet, survivor benefits commencing January 20, 1963, is correct. Under the instant facts and circumstances and the findings we have made, it is not necessary for us to determine whether Maillet was given a gratuity or paid a salary up to January 20, 1963.
 

 For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, on rehearing, is reversed and set aside. The judgment of the trial court is affirmed. All costs to be paid by defendant.
 

 HAMITER, J., concurs in the result.
 

 [1]
 

 . An affidavit, dated August 20, 1963, signed by Dr. Albert Abramson, a duly qualified physician in Avoyelles Parish, Louisiana, states in part that “he was one of the treating physicians of Gaston Maillet, deceased, and that on the 30th of October, 1962, a biopsy of the left arm by Dr. Paul Davis, Alexandria, Louisiana, revealed a metastatic adenocarcinoma, primary site unknown. After this, he was treated by different doctors in different hospitals in the State of Louisiana and
 
 *967
 
 at no time was the primary site of the malignancy determined. In November, 1962, he developed pain in his right heel and it was thought that this might be another metastatic lesion and he was referred for x-ray therapy to this heel. He continued to suffer with pain in his arms, legs, back, hips and practically all parts of liis body. Mr. Maillet died on the 23rd of January, 1963, as a result of this cancer. Although, Mr. Maillet was advised to continue work to keep up his morale, I considered him disabled from working as of the 1st of December, 1962, because of the malignancy from which he was suffering.”