SAMUEL, Judge.
Plaintiffs, nine retired employees of the New Orleans Sewerage and Water Board, filed this suit to recover amounts allegedly wrongfully withheld from their pension payments by the Board. The petition also seeks an injunction preventing the Board from continuing to make the deductions.
The original Sewerage and Water Board pension plan was authorized by Act 101 of 1942, which empowered the Board to establish a pension fund and to make such rules and regulations as it deemed necessary to carry out the purposes thereof. As admitted by all litigants, pursuant to the act the Board adopted the following formula for the benefit of those employees having between 25 and 35 years of service:
(a) Retirement at half the monthly income after 30 years of service, regardless of age;
(b) Retirement at half the monthly income upon attaining 60 years with 25 years of service; and
(c) Retirement at 60% of salary at the time of retirement up to $200 and 50% of the balance if the employee had 35 years of service.
Act 101 of 1942 was amended and reenacted by Act 15 of 1944 to read the Board “shall provide out of its Operating- *666 Maintenance fitnds a sufficient sum to meet the deficiency in the pension fund which may occur in any calendar year.” In 1956 there was an existing deficit of $8,863.08 which had not been made up from the operating maintenance fund of the Board in spite of the 1944 act. Act 551 of 1956 again amended and reenacted the pension plan provisions, then contained in LSA-R.S. 33:4076, for the purpose of enabling the Board to set up “an actuarially sound pension fund” by coordinating the fund with the Federal Social Security Act, as authorized by 42 U.S.C.A. § 418. The 1956 act ordered the Board to set aside and pay to the fund from its operating maintenance funds “such amounts as may be necessary to maintain the fund on an actuarial basis.”
In order to coordinate the pension plan with the social security system, on November 21, 1956 the Board held an election of all employees in conformity with 42 U.S. C.A. § 418(d) (3) (E), which requires that a majority of eligible employees vote in favor of the plan before it can become operative. The trial court found, and there is no evidence in the record to the contrary nor do appellants dispute the finding, that the election carried favorably by a vote of approximately 10 to 1.
The coordinated pension plan went into effect on January 1, 1957 after an agreement had been entered into between the Secretary of Health, Education and Welfare and the proper state officials as provided by 42 U.S.C.A. § 418(a) (1). One of the regulations adopted by the Board was:
“Any employee having twenty (20) years or more of creditable service in the employ of the Sewerage and Water Board prior to January 1, 1957, may retire under either the provisions of the old plan or the provisions of the new plan, whichever he may elect. Employees who elect to retire under the provisions of the old plan after the effective date of these rules and regulations will receive the benefits provided by the old plan based on the last twelve months salary, or the average of the highest three consecutive years, whichever is the greater, less one-half or 50% of amounts received from Social Security in excess of Thirty ($30) Dollars per month.”
Thus plaintiffs, all of whom had more than 20 years or more of service, had the option of retiring under the “old” (former) plan or under the “new” (coordinated) plan. By retiring under the “old” plan they would receive the benefits provided by that plan under the formula we have set out in the second paragraph of this opinion, less one-half of the amounts received from social security in excess of $30 per month as provided in the above quoted regulation. By retiring under the “new” plan they would receive the full benefits of social security; but the Board payments based on a percentage of their salaries would be less than under the “old” plan and would not apply to the first $100 of monthly salary. At retirement all of the plaintiffs chose the “old” plan and each plaintiff testified he had done so because, at the time of his retirement, he would receive greater benefits under the “old” plan than he would under the “new” plan.
Accordingly, under the “old” plan, the Board deducted one-half of the amount of all social security payments received by plaintiffs in excess of $30 per month from the monthly pension checks issued to them by the Board. With the exception of the 1965 increase in social security benefits, these deductions included all social security benefits increases received since 1957. No deduction was made of the last increase in 1965 because of the instant litigation. By this suit plaintiffs seek to recover the full amount of all deductions made on the basis of the social security benefits received by them.
The trial court judgment awarded plaintiffs only the amounts deducted on the basis of the increases of social security received by the plaintiffs, holding that when the employees had voted to coordinate the pension *667 plan with the social security system, and when the Board instituted its system of benefits, all of the parties did so with the understanding that the formula set forth in the regulation quoted above should apply to deductions made in accordance with the benefits received from social security as of that time and the total amounts deducted should not be increased even though the social security benefits were increased. Thus the trial court held the Board validly had made all deductions other than those resulting from increases in social security benefits. The judgment does not enjoin the Board as prayed for in the petition or in any other manner.
Seven of the nine plaintiffs have appealed. One of those appellants died while the appeal was pending and the proper parties have been substituted for him. In this court appellants seek recovery of all amounts deducted from their pension as a result of social security payments received by them. Alternatively, they pray that the judgment be affirmed. Defendant has answered the appeal praying that the judgment be amended so as to deny plaintiffs’ claim in its entirety. Defendant also seeks a dismissal of the appeal on the ground that the Board has paid to the respective appellants the full amounts awarded to them by the judgment, said payments having been made and accepted prior to the taking of this appeal.
We cannot consider defendant’s attempt to have the appeal dismissed. An unqualified answer to an appeal seeking an amendment to or a change in the judgment appealed from, without reservation of the right to seek a dismissal of the appeal (which are the facts in this case), waives any right to have the appeal dismissed. Robertson v. Town of Jennings, 128 La. 795, 55 So. 375; Franks v. Harper, La.App., 134 So.2d 916; Gray v. Bird & Son, La.App., 12 So.2d 828; Stringfellow v. Murphy, La.App., 195 So. 844.
In this court appellants make the following contentions:
(1) That they had a vested interest in the “old” plan and should receive the full benefits thereof regardless of any subsequent legislation, citing Maillet v. Board of Trustees, Teachers’ Retire. Sys., 248 La. 964, 183 So.2d 321, Bowen v. Board of Trustees of Police Pension Fund, La.App., 76 So.2d 430, and Young v. Department of Highways, La.App., 160 So.2d 391. Maillet is not apposite here except for a holding that pension plans should be liberally construed and the holdings of Bowen and Young are directly opposed to the principle of “vested interest” as applied to the majority of the appellants.
Maillet concerned a statute which provided that the survivor-beneficiary of a retired pensioner could not collect benefits in pension form if the pensioner died within thirty days of the date he requested the survivor receive the benefits in that form. The sole question before the court was whether the thirty-day period should be computed from the time of the application for retirement was made or from the approval thereof. The Supreme Court held that the computation should be made from the date of application. Although the court did state that pension plans should be liberally construed and did liberally construe the statute in favor of the widow, the ultimate holding has no bearing on the instant case.
In Bowen the plaintiff contended an increase of service requirements for a police pension made after he had joined the police department could not constitutionally be applied to him. This court held the plaintiff had no vested interest in the retirement plan until he was eligible therefor; until that time the right to such a pension was inchoate and could be modified by subsequent legislation. This is also essentially the holding in Young, in which a change of the mandatory retirement age was involved, that court citing Bowen with approval. The *668 rule in Louisiana is that one has no vested rights in a pension plan until he becomes eligible for the pension. Meyer v. Board of Trustees of Firemen’s Pension & Relief Fund, 199 La. 633, 6 So.2d 713; 52 A.L.R.2d 460-461.
Five of the appellants were not eligible for retirement when the quoted new regulation regarding employees having twenty years or more of service went into effect on January 1, 1957. Therefore these five clearly had no vested rights in the 1942 pension plan. A more difficult question is presented by the status of the remaining two appellants, William F. Harvey and Arthur M. Adolph, who were eligible for retirement at that time. However, the Board did give them the opportunity to retire under the “old” plan at the time the new regulation went into effect thereby protecting their vested rights. Although they could have retired under the pension plan in which they had vested rights, these appellants chose not to retire at that time but to remain under the coordinated Board-social security plan. It is significant that both gave as their principal reason for voting for the social security plan a desire to protect their wives in the event of their deaths, as in that instance social security provided greater protection than the Board pension. Because they freely chose not to retire after the new regulation went into effect, thereby receiving added benefits, there is no basis for their complaint.
(2) Plaintiffs concede an election was held in accordance with the cited federal statute; but they claim they did. not understand the nature of the plan on which they were voting. Although the evidence preponderates to the effect that the plaintiffs did not fully understand the plan as described to them by Board officials at a series of meetings, a pamphlet describing the plan was distributed to each employee. Concerning the plaintiffs, each of whom had twenty or more years of service to his credit, the pamphlet described their choice as follows:
“EMPLOYEES HAVING TWENTY OR MORE YEARS OF CREDITABLE SERVICE AT DATE THIS PLAN IS ADOPTED:
All Employees having twenty or more years of creditable service on the date this plan is adopted will be allowed to retire under either the provisions of the old plan or the provisions of the new plan, whichever they may elect. Since these employees will be automatically covered by Social Security, any amounts received from Social Security benefits will be deducted from their retirement allowance when they become eligible for these benefits.”
(Emphasis ours).
Therefore, the plaintiffs, from whose checks one-half of their social security above $30 was deducted, received more advantageous treatment than they were promised in the pamphlet which stated that any social security payments would be deducted from their pension plans.
Three of the appellants voted for the coordinated pension plan; one does not know how he voted although he believes he voted against it; one simply made the ambiguous statement that he voted “for the pension”; and two voted against the plan. There is no evidence in the record that the plaintiffs’ votes could have defeated the plan; the evidence is to the contrary. As the vote was approximately 10 to 1 in favor of the coordinated pension plan and as a large number of employees voted in the election (apparently in excess of 1,000), the votes of the seven appellants, or of the nine plaintiffs, could have made no difference in the result of the election.
(3) Plaintiffs contend the deductions from their checks were not necessary, to keep the system actuarially sound, especially in view of the fact that under Act 15 of 1944 and Act 551 of 1956 the Board could pay from its operating and maintenance fund such amounts as might be necessary to maintain the fund. However, W. E. *669 Groves, the Board’s consulting actuary, testified that in 1956 the pension plan was actuarially unsound and the deficit could not have been made up without impairing the Board’s other functions; that the plan was actuarially sound in 1958 after it had been coordinated with social security; and that the present plan of deductions was necessary to keep it actuarially sound, otherwise the operating maintenance fund would have to be used to cure the deficiency with resulting impairment of primary functions.
While Act 551 of 1956 authorized the Board to use the operating maintenance fund for pension plan deficits, it also placed the pension fund under the jurisdiction, control and management of the Board and gave it authority to enact any rules and regulations it might deem proper for the operation of the plan. The Board was not required to incur a deficit so that the operating maintenance fund would have to be used nor was it precluded from adopting regulations to make up any existing deficit. The obvious purpose of both acts was to save the pension plan by making it actuar-ially sound.
Plaintiffs correctly argue that the $8,886.08 deficit carried over into the present plan was in contravention of Act 15 of 1944 which required the Board to use its operating maintenance fund to make up any deficiency in any calendar year. Admittedly, in not making up that deficit in the calender year or years in which it was incurred, the Board did not fulfill the requirements of this law. However, plaintiffs have failed to show they were prejudiced thereby or that the withdrawal of that amount from the operating maintenance fund would have been sufficient to keep the plan on an actuarially sound basis. Indeed, from all the evidence in the record, which contains no evidence to the contrary, we are satisfied the appellants were not prejudiced by the failure of the Board to make up the deficit of $8,886.08 out of its operating maintenance fund and quite clearly such a single payment would not in itself have been sufficient to keep the plan on an actuarially sound basis. Plaintiffs in this suit, only nine of more than 1,000 employees, had an average retirement of less than four years at the time their petition was filed, and yet they alone claim a total of $17,581.53. Compared to that figure the sum of $8,886.08 is an insignificant. amount in relation to the problem we are discussing.
(4) Plaintiffs further contend the following provision of 42 U.S.C.A. § 418 precludes the Board from making any deductions from their pension checks based on social security payments:
“It is declared to be the policy of the Congress in enacting the succeeding paragraphs of this subsection that the protection afforded employees in positions covered by a retirement system on the date an agreement under this section is made applicable to service performed in such positions, or receiving periodic benefits under such retirement system at such time, will not be impaired as a result of making the agreement so applicable or as a result of legislative enactment in anticipation thereof.” 42 U.S.C.A. § 418 (d) (2).
 This contention is without merit because the deductions do not “impair” the protection afforded by the old retirement plan but strengthen it by keeping it actu-arially sound. Plaintiffs are presently receiving more retirement pay than they would have' received if the original version of the plan had not been coordinated with social security. In fact, as noted above, Mr. Groves stated the “old” plan could not have continued without revenues which would have had to have been diverted from the operating maintenance fund of the Board, thus curtailing other operations. Until the Board pension was coordinated with social security, the plaintiffs’ pensions were in jeopardy, in actual danger of being “impaired”. It is unrealistic to conclude that Congress would have intended to *670 freeze the old employees in an unsound retirement system while leaving the state free to inaugurate a new retirement system for employees hired by the state after an agreement with the federal government had been confected. We conclude the cited provision means the protection should not be less ■ under the coordinated social security agreement with the state than it would have been under the state’s former pension plan. The Board’s present pension plan for the plaintiffs clearly meets this requirement. ■
Defendant’s answer to the appeal is limited to praying that the judgment be amended so as to deny plaintiffs’ claim in its entirety, i.e., that we reverse that portion of the judgment which awarded plaintiffs those amounts deducted by the Board solely on the basis of the increases in in social security benefits. We find we cannot consider the answer. An appeal cannot be taken by a party who voluntarily and unconditionally acquiesced in a judgment rendered against him and voluntary payment of an adverse judgment by the party cast, without reservation of the right to appeal, constitutes such an acquiescence. LSA-C.C.P. Art. 2085; Washington v. Independence Oak Flooring Co., La.App., 114 So.2d 599; Robicheaux v. Albritton, La.App., 113 So.2d 87; Griffis v. Harmon & Crane, La.App., 108 So.2d 822.
This rule applies to an answer to an appeal as well as to the appeal itself for the reason that, for all practical purposes, an answer to an appeal is an appeal. Washington v. Independence Oak Flooring Co., supra. Here the defendant admits it made voluntary payment in full of the only part of the judgment of which it complains in answer. Under the rule just set forth it has acquiesced in the trial court judgment.
The judgment appealed from is affirmed.
Affirmed.