STOKER, Judge.
This is a mandamus action on behalf of several individual retired Lake Charles firemen. It is also a class action on behalf of all persons who were retired from the Lake Charles fire department on the effective date of Act 347 of the 1976 Regular Session of the Louisiana Legislature.[1]
The question posed by this appeal is whether or not the Act should be given *974 retroactive effect. The effective date of this Act was October 1, 1976. The Act in question amended the Louisiana statute relative to the Firemen’s Pension and Relief Fund for the City of Lake Charles, hereinafter referred to as the “Fund”. The defendants are the Fund and its Board of Directors.
The objective of plaintiffs’ suit is to obtain the benefits of Act 347 of 1976. They seek a writ of mandamus directing the Board of Directors of the Fund to recompute the retirement benefits of plaintiffs and the class they represent as they were increased under Act 347 of 1976. The trial court denied the relief sought; it held that the Act did not apply retroactively, that is, it did not apply to persons who retired prior to October 1, 1976. The present appeal is from that denial. We affirm.
Counsel for both parties extensively and ably briefed their respective positions. They favored the Court with a detailed history of the various acts of the Legislature which developed the present version of the legislation providing for the Fund.
FACTS
As succinctly as we can state them, the facts of this case are as follows. The legislation in question began with Act No. 186 of 1944. It has been amended and revamped several times since 1944.[2] Prior to the meeting of the Louisiana Legislature in 1976, deep concern developed over the solvency of the Fund. A comprehensive study was conducted. The conclusion was reached that the Fund was, indeed, in fiscal trouble.[3] The concern prompted suggestion to the 1976 Legislature that it make major provision for a sound financial base for the Fund. Placing the Fund on a fiscally sound basis appears to be the only objective sought. Nevertheless, the benefit provisions were liberalized. All evidence indicates that in the study made of the Fund, in local considerations of the study findings and in legislative hearings, no thought was given to the effect which proposed changes would have if such changes were applied to firemen already retired or their survivors.
Following the events mentioned above, the Louisiana Legislature adopted Act 347 of 1976, the Act which is the subject of this litigation. In addition to providing for increased contributions to the Fund, the Act liberalized benefits to some extent.[4] The Fund failed to give retroactive effect to the Act. Defendants take the position that the Act was meant to have prospective effect only. This law suit tests the contentions and position of each party.
Basically, plaintiffs rely upon two arguments to support retroactive application. They point out that in adopting previous amendatory legislation to liberalize the benefit provisions of the Fund, the Legislature had always provided a caveat or proviso. Each such piece of legislation carried a provision making it prospective in operation by specifically providing that the legislation would not apply to persons who retired prior to a certain date, generally the effective date of the legislation. Act 347 of 1976 did not carry such a provision. Plaintiffs urge this absence is significant. They argue that, having uniformly included a provision limiting previous Acts to prospective operation, the Legislation must be deemed to have meant for Act 347 of 1976 to apply retroactively as well as prospectively. In addition, plaintiffs assert that pension and *975 retirement legislation is regarded as remedial legislation, and it is generally the rule in statutory construction that remedial legislation is construed to have retroactive effect.
The position of defendants is as follows. First, it is urged that the insertion of provisions in prior amendments limiting their effect to prospective operation does not dictate that failure to include such a clause in the 1976 amendment is significant. Secondly, the defendants urge that legislation is generally considered to be prospective in operation. They recognize exceptions which include remedial legislation. However, defendants urge that, if the thrust of Act 347 of 1976 is remedial, it is necessary to consider the situation the Act was intended to remedy. In this case the reason for the Act was to make the Fund financially safe. The legislative history shows that projections on which the contribution provision of the 1976 Act were established did not include any increased drain on the Fund which would result from making it applicable to persons already drawing benefits from the Fund when it became effective. Hence, to now make it so applicable, would work at cross purposes with the fundamental reason for adoption of the Act.
Beyond the above reasons defendants rely on what they refer to as an interpretive act — Act 656 of 1978. That Act was passed subsequent to the filing of plaintiffs’ suit in this matter. In other words, it was adopted while the litigation was pending. The 1978 Act simply readopted the benefit provision of the 1976 Act with the addition of a proviso reading “The benefits provided herein also provide with respect only to persons who retire on or after October 1, 1976.”
THE TRIAL COURT’S RULING
The trial court found in favor of defendants and declined to issue the writ of mandamus sought by defendants. It relied almost entirely on the 1978 “interpretive act”. Defendants argue that their right to benefits conferred upon them by their interpretation of the 1976 Act became vested on October 1, 1976. The trial court devoted extensive portions of its reasons for judgment to supporting the proposition that the 1978 interpretive act could validly apply retroactively to October 1, 1976. Defendants vigorously attack this position of the trial court. They also urge that interpretive legislation should not be permitted to affect pending legislation.
We agree with the result reached by the trial court. We do not find it necessary, however, to rely on the 1978 interpretive act for a resolution of this case.

EFFECT OF ACT 347 of 1976 ASIDE FROM INTERPRETATION BY ACT 656 of 1978

In our opinion, the intent of the 1976 Legislature as to whether Act 347 should operate retroactively or prospectively only, may be gleaned from the Act itself. It was meant to operate prospectively only. This conclusion is buttressed by the evidence as to all that led up to the adoption of Act 347 of 1976.

Language of Act 347 of 1976.

The 1976 Act amended two sections of the original Act only. These were Section 9 and 13. Section 9(3) and (4) were amended to increase the flow of contributions into the Fund. This is what had prompted introduction of the bill in the Legislature which became Act 347 of 1976. Prior to 1976 the last Act affecting the Fund had been Act 236 of 1970. In the 1970 Act, Section 9(3) and 9(4) established employee contributions into the Fund at four percent of gross salary and a matching contribution of four percent of the total salary of all employees of the Fire Department of the City of Lake Charles. The 1976 legislation set up a graduated annual increase of one percent in employee contributions and in city matching funds. The annual increase would bring the contributions to eight percent each for both the employees and the city by fiscal year 1979-80 and would then continue at that percentage. Thus, by that time annual contributions to the fund for each would have doubled (from four to eight percent).
*976 Section 13 B 3 of the Fund Act was also changed in 1976. No change was made in disability payment provisions. The sliding scale for non-disability retirement was increased in some instances,[5] and. the $500 a month ceiling was removed for all employees who retired by reason of years of service for those who elected to remain employed beyond 20 years.
It should be noted that the scale of benefits under both Acts is so established as to encourage firemen to remain employed beyond twenty years. Moreover, in the later years the annual increases become greater. Thus, it may be seen that the purpose of the scale is not merely to benefit employees. The solvency of the Fund should be enhanced by retaining employees as active firemen who would thereby continue to contribute to the Fund and, at the same time, avoid the necessity of replacement which would result in paying a salary to a replacement employee while also paying retirement benefits to retired employees.
Consequently, while the 1976 Act increased the sliding scale for some of the final years ending with 30 years’ service, the change promoted Fund solvency. Also, the change was made consequent upon the adoption of the dual package, that is, the increase in contributions as well as the increase in the scale for the later years. Both changes were made on the basis of what was apparently a competently and well conducted fiscal study. Therefore, it may be presumed that the primary objective of the increased scales under the 1976 Act was to promote the soundness of the Fund; only incidentally did it result in benefiting some retirees who might prolong their years of service.
In this connection, it should also be considered that the 1976 Legislature made no change m disability retirement payments. If increased benefits generally, or across the board increases, had been intended, it would have been reasonable for the Legislature to have arranged things differently. That is to say, if it had been the Legislature’s intention to benefit persons already retired, as well as those who would retire in the future, it logically should have increased benefits for disability retirees as well as for those who retire on the basis of twenty year’s service or more.

Failure To Include a Proviso Clause in the 1976 Act.

As one of their principal theses plaintiffs have argued that the Legislature’s failure to provide that Act 347 of 1976 have prospective effect only is significant. The sole basis for this argument is that, having consistently done so in all previous Acts affecting the Fund, it must be presumed that failure to so include such a provision was intentional and indicated an intent to have the 1976 Act cover persons already retired. At first glance, this postulate appears quite plausible. However, upon reflection we do not regard it as significant or controlling. The insertion of such provisions in previous Acts certainly made the issue clear as to those Acts, but the custom and practice of doing so, just as certainly, does not mean that failure to do so indicates an intention to extend coverage retroactively. This is particularly true when one notes that the terms of the 1976 Act itself so persuasively indicate an intention for prospective operation only.

Legislation Generally Regarded as Prospective in Operation.

As a general rule, laws are deemed to be prospective in effect unless *977 their language clearly indicates otherwise. Green v. Liberty Mutual Insurance Co., 352 So.2d 366 (La.App. 4th Cir. 1977), writ denied, 354 So.2d 210 (1978). Exceptions to this principle are recognized as to laws which are interpretive, remedial or curative and procedural.[6] In their brief plaintiffs candidly admit their case would fall if the 1976 Act should be interpreted according to the usual rules of statutory construction. In avoidance of the general rule, plaintiffs assert that the general rule is not applicable to retirement and pension statutes. Plaintiffs urge in this connection that pension and retirement legislation is generally considered remedial. For this exception plaintiffs cite Maillet v. Board of Trustees, Teachers’ Retirement System of Louisiana, 248 La. 964, 183 So.2d 321 (1966); Christen v. Board of Trustees, Louisiana State Employees’ Retirement System, et al., 351 So.2d 1307 (La.App. 1st Cir. 1977), writ denied 353 So.2d 1049 (La.1978) and Miller v. City of Shreveport, 90 So.2d 565 (La.App. 2nd Cir. 1956).
Our own appreciation of these and other authorities on the subject is that the rule of exception is not as all-embracing and automatic as plaintiffs contend it is. The rules do not change simply because a retirement or pension Fund is involved. In the cases relied upon by plaintiffs the rule of exception is appropriate. The appropriateness rests upon the fact that the specific legislation in each case was truly remedial. Each met this test. Here, we have already indicated that in our opinion, if Act 347 of 1976 was remedial, it is not remedial because its object was to liberalize benefits, although it did so to some extent.
Plaintiffs have cited and discussed several cases in support of their claim that the 1976 Act should be considered remedial and be liberally construed and given retroactive effect. The first is White v. Board of Trustees of Teachers’ Retirement System, 276 So.2d 714, (La.App. 1st Cir. 1973), writ refused, 279 So.2d 694 (La.1973). The facts of the White case are distinguishable from those of our case because in the White case the sole purpose of the statute being construed was to make all system retirees equal. Plaintiffs next cite Hearn v. Board of Trustees of the Assessors’ Retirement Fund, 204 So.2d 123 (La.App. 2nd Cir. 1967), writ ref., 251 La. 735, 206 So.2d 90 (1968). The Hearn case is distinguishable. In Hearn, a 1966 statute was made applicable to plaintiff retirees in a situation in which they had retired on January 1, 1965. The statute provided that it should not be construed to increase or decrease benefits of retirees or of a surviving spouse, where benefits were being paid them prior to August 1, 1960. The court reasoned from the language that the 1966 statute was applicable to all retirements which took place after August 1, 1960.
Plaintiffs cite the case of Swift v. State, 342 So.2d 191 (La.1977) as being an endorsement by the Supreme Court of remedial classification and liberal construction rule. On its face the Supreme Court’s opinion in Swift appears to contain a strong statement. Nevertheless, the statement as we read it, is qualified. It set forth the proposition in a quotation from a case in which it had denied a writ; Groves v. Board of Trustees of the Teachers’ Retirement System, 324 So.2d 587 (La.App. 1st Cir. 1975) writ denied 326 So.2d 380 (1976). The quotation appears on 324 So.2d page 594 of the Court of Appeal decision and is as follows:
We commence our interpretation of subject statute by noting that legislation *978 providing pension systems must be liberally construed in favor of the intended beneficiaries. Maillet v. Board of Trustees, Teachers’ Retirement System, 248 La. 964, 183 So.2d 321; Miller v. City of Shreveport, La.App., 90 So.2d 565. Accordingly, any ambiguity in such a statute must be resolved in favor of the persons intended to be benefited thereby. (Emphasis supplied.)
We note that the quotation adopted by the Supreme Court carefully qualified its position. In both quoted sentences, the principle approved is limited in application to those to which the statute in question intended the benefit to apply. Consequently, no automatic rule is provided, and the Courts are to look to the intent of the specific legislation being construed. Further, as we have already indicated, we discern no ambiguity in Act 347 of 1976.

Legislative Intent of Act 347 of 1976.

At this point we think it would be repetitious to engage in extensive discussion of the intent of the Legislature in adopting Act 347 of 1976. We have already amply indicated our opinion as to its purposes — to establish a sound financial basis for the Fund. We have noted that no provision was made for increasing benefits to firemen retired for disability. We have noted the evidence which shows that obligation to persons already receiving retirement pay was not contemplated by the agency which made financial projections to set up a sound Fund, nor was anyone ever given any impression that the proposed legislation would cover persons already receiving retirement pay. On the contrary, at meetings and hearings where the matter was raised, it was made clear that firemen and survivors already retired were not considered in proposals made or the legislation as drafted. Hence, we think it is clear that the 1976 Act was intended to have prospective effect only.
ACT 656 OF 1978
Act 656 of 1978 has been referred to in this litigation as curative legislation, or interpretive legislation. Its title states that it is an Act “to clarify that the benefit provisions of Act 347 of 1976 of the Regular Session of the Legislative were, and are, prospective only.” As we review the 1976 Act as being reasonably clear and without ambiguity, we find it unnecessary to rest our decision on the 1978 Act. Accordingly, it will not be necessary for us to discuss the several issues raised challenging the power and authority of the Legislature to enact such legislation.
For the foregoing reasons we affirm the judgment of the trial court. Costs of this appeal are to be assessed to plaintiffs-appellants.

AFFIRMED.

. Included in the class are survivors of all deceased members of the Lake Charles Fire Department who retired before October 1, 1976.

. The pertinent Acts are as follows:
Act No. 186 of 1944; Act No. 79 of 1946; Act No. 48 of 1950; Act No. 243 of 1952; Act No. 20 of 1954; Act No. 62 of 1956; Act No. 398 of 1958; Act No. 378 of 1968; Act No. 236 of 1970; Act No. 347 of 1976; and Act No. 656 of 1978.

. The study and report of findings were made by the Lake Charles-McNeese Urban Observatory, Inc. a federally-funded non-profit corporation.

. Act 347 of 1976 changed the formula for computing service retirement benefits by adopting a new basis, raising the sliding scale of benefits, and removing a $500 a month ceiling from benefits paid to all members except those who retired with only twenty years of credible service. However, the Act did not change any provisions relative to disability benefits.

. A tabular comparison of the changes in the sliding scale provided by Act 236 of 1970 and Act 347 of 1976 is as follows:
1970 Act 1976 Act
Service Years Increase
20 50 50
21 5172 5172
22 53 53
23 5472 5472
1970 Act 1976 Act
Service Years % % % Increase
56 56 — N
5772 59 ' l‘/2 m N
59 62 3 (o N
6172 65 3l/2 n N
62 68 6 co N
6372 71 7>/2 o N
• 66% 75 873 o CO

. Authority for these principles are set forth in Green v. Liberty Mutual Insurance Co., supra, as follows:
[1] As a general rule, laws are deemed to be prospective in effect unless their language clearly indicates otherwise. C.C. art. 8; R.S. 1:2; Churchill Farms, Inc. v. Louisiana Tax Com., 338 So.2d 963 (La.App. 4th Cir. 1976); Doucet v. Insurance Company of North America, 302 So.2d 731 (La.App. 3d Cir. 1974); 1 Planiol Treatise on the Civil Law (La.St.L.Inst. transí. 1959) §§ 254 and 255 at page 181. Exceptions to this principle are laws which are (1) interpretative (Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1975); (2) remedial or curative (Fullilove v. U. S. Casualty Company of New York, 129 So.2d 816 (La.App. 2d Cir. 1961); and (3) procedural.