GULOTTA, Judge.
This mandamus suit is before this court on certiorari.
This litigation involves a petition to amend the Home Rule Charter of the City of New Orleans by deleting the prohibition in Sec. 4-201 against a Mayor who has served two full consecutive terms from succeeding himself.[1]
The Charter provides for amendments by an affirmative vote of a majority of qualified electors of the City. Proposed amendments may originate either by ordinance of the City Council or by a petition of not less than 10,000 of the duly qualified registered voters of the City.[2]
On May 12, 1983, a petition for the proposed Charter amendment with 18,336 signatures was submitted to the City Council. The Council referred the matter to the Registrar of Voters for the Parish of Orleans to determine whether it was signed by 10,000 duly qualified registered voters. On May 20 and June 20, supplemental lists of signatures were submitted and forwarded to the Registrar for verification. On June 22, the Registrar certified in excess of 10,000 signatures from the original and supplemental petitions. He further stated that if the verification process were to continue he would “eventually verify 10,000 signatures from the May 12, 1983 submission.”
Plaintiffs, who are citizens and taxpayers of the City, filed a suit on July 12, 1983, against the Registrar of Voters and the City Council seeking (1) to mandamus the Registrar to continue verifying signatures submitted-to him on May 12, 1983 to determine if the petition contains the signatures of 10,000 duly qualified registered voters of the City, and (2) to mandamus the Council to provide by ordinance for an election on the proposed Charter change to be set not less than 90 days nor more than 120 days after July 12, 1983. The next scheduled election day within that time frame is October 22, 1983.
Based on the Registrar’s certification to the Council on June 22, 1983 of 10,000 verified signatures from the original and supplemental petitions, the trial judge denied mandamus against the Registrar, thereby dismissing the petition against him. He further ordered the Council to provide by ordinance for an election on the proposed amendment “... if the Council received 10,000 signatures of qualified registered voters on May 12, 1983.” The trial judge noted “The fact that the Council may not at this writing, have received the certification of the Registrar of Voters, must not impede said Council in its mandated duty to pass an ordinance within sixty (60) days of May 12.”
When the Council, at its meeting on Thursday, July 21, did not adopt the ordinance, plaintiffs filed a motion in the trial court for clarification of judgment and contempt of court. In that motion, plaintiffs claimed that the July 21 meeting of the Council was the last regular meeting for calling an election on October 22, 1983, in *710 compliance with the 90 day notice requirement of Sec. 9-202(2) of the Charter.
When the trial judge set the contempt rule for hearing on July 27, plaintiffs sought supervisory writs in this court to have the motion for clarification and contempt heard on or before July 23,1983, and to order the Council to meet and pass the appropriate ordinance on or before that date. Alternatively, plaintiffs request this court call an election in accordance with the Charter.
On July 22, we issued certiorari ordering the matter be submitted in its entirety on July 26, 1983, by all parties to the original litigation.
The Registrar claims that he has no further duty to perform and the judgment dismissing him from this suit should be affirmed because he has certified 10,000 signatures. Citing LSA-R.S. 18:221, the Registrar further contends that in this mandamus proceeding he can only be sued as a “sole defendant”, and that joinder of the Council as a party defendant contravenes the statute.[3]
The question confronting us is whether the phrase, “sole defendant”, in the statute not only allows the Registrar to be sued alone but also prohibits the joinder of other parties who are proper parties in the overall determination of a justiciable issue. In this dispute, the Registrar and City Council, whose functions interrelate in the resolution of the problem, are indispensable parties to the suit. An example of interrelationship is a letter attached to the petition from the Registrar to the Clerk of the Council stating that, if the request came from the Council for verification of the signatures on the May 12,1983 petition, the Registrar would continue the process of verification.
Although we find no jurisprudence interpreting the applicable part of LSA-R.S. 18:221, our brothers on the First Circuit in Groves v. Board of Trustees of Teach. Retire. Sys., 324 So.2d 587 (La.App. 1st Cir. 1975), writs denied 326 So.2d 378 (La.1976) and 326 So.2d 380 (La.1976), recognized the right of intervention in a mandamus suit. Furthermore, if we take the view that the phrase “sole defendant” is a prohibition against joining an indispensable party, the statute would run in direct contravention and conflict with LSA-C.C.P. Art. 641 which provides:
“Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
No adjudication of an action can be made unless all indispensable parties are joined therein.”
We point out further that if plaintiffs had chosen to file one suit against the Registrar of Voters seeking mandamus ordering the Registrar to continue the inspection and certification of the names on the May 12 petition, and a second, separate suit had been filed against the Council, it would be within the Court’s discretion to consolidate both matters, putting both cases in virtually the same posture as the present litigation. Under the circumstances, we reject the Registrar’s contention regarding a misjoin-der of parties.
Accordingly, we conclude that the Registrar of Voters is properly joined with the Council as party defendants and both defendants are properly before this court.
Turning now to the central issue in this matter, we are confronted with the Council’s argument that the 10,000 signatures of qualified voters were not certified until June 22, 1983, and, accordingly, that the Council has until August 21,1983 to call an election pursuant to the mandate of the Home Rule Charter. Based on this factual conclusion, the Council asserts that the ex *711 ercise of supervisory jurisdiction is not appropriate where there has been no showing of irreparable injury.
The Council further contends that Sections 9-201 and 9-202 of the Charter do not provide for the filing of supplemental petitions and, because the original petition submitted to the Council on May 12 did not contain a sufficient number of signatures of duly qualified registered voters, the trial judge erred in prematurely mandating the Council to call the election.
We do not agree. On June 22,1983, the Registrar of Voters certified to the Clerk of the Council that as of noon of that date he had verified the signatures of more than 10,000 qualified registered voters from the original petition submitted on May 12, 1983 and the supplemental petitions submitted on May 27, 1983 and June 21, 1983. In that letter the Registrar pointed out:
“We believe that if the verification process continues we will eventually verify 10,000 signatures from the May 12, 1983 submission.”
It is clear from this letter (and from the Registrar’s testimony in the mandamus hearing) that, if the Registrar were permitted to continue to examine the 18,336 names on the original petition, eventually 10,000 signatures would be verified. This testimony is significant because on May 16, 1983, four days after submission of the original petition, 9,103 signatures had been certified. Also significant is that 9,414 names had been certified from the original petition at the time of the July 15 trial of the mandamus.
We digress to point out that when the Council received the original petition it properly submitted the list to the Registrar of Voters for verification purposes. We point out further that the method utilized by the Registrar in seeking verification was reasonable and appropriate under the circumstances. The problems encompassed by the Registrar were illegible names and incorrect or missing addresses.
When we consider the key role' of the Registrar of Voters in the Charter amendment process, together with his assertion that the required number of signatures would eventually be verified from the May 12,1983 petition, we are led to conclude the trial judge erred in not requiring the Registrar to continue his verification search. The continuing search is particularly important when considered in light of the Council’s duty to provide an ordinance within 60 days of receipt of the petition. If the original petition contains the minimum required number of signatures, the “receipt” of the petition, duly verified, is May 12, the day the original petition was filed with the Council. Under these circumstances, the 60 day period for the adoption of an ordinance commences from May 12, 1983.
If indeed the definitive date triggering the 60 day requirement for providing an ordinance is May 12, the clear intent of the framers of the Home Rule Charter and those provisions relating to its amendment cannot be circumvented by the Council’s failure to provide the necessary ordinance when the 10,000 signatures have been certified within the 60 day period from the filing of the original petition. Indeed, on June 23, 1983, one day after the Registrar’s certification, an ordinance was introduced before the Council to set in motion the process for amending the Charter in accordance with Sections 9-201 and 9-202. However, action on that proposed ordinance was deferred on July 7 to an indefinite date.
One of the problems confronting us is that Section 9-202(2) provides the election shall be fixed at no less than 90 nor more than 120 days after the effective date of the ordinance. Because the ordinance has not been adopted by the Council and because there are less than 90 days before the October 22 election, this provision cannot be satisfied. As we interpret this provision, its intended purpose is to allow sufficient time to make the voting public aware of the proposed amendment.
Under the unusual circumstances in the case, the requirement of compliance with this 90 day provision has little meaning. Furthermore, there is sufficient time for the Council to comply with the require *712 ment of publication not less than 60 days prior to the election, if indeed the Registrar’s continued search results in the calling of the election on October 22, 1983. We conclude, therefore, that failure to comply with the 90 day requirement will not invalidate the adoption of the ordinance if the other requirements of the Charter provisions are met and if the Registrar certifies the required number of names from the May 12 petition. Were we to reach a different conclusion, we would be permitting delays in the certification process to frustrate the clear intent of the Charter amendment provisions.
In the final analysis, the crucial question is whether the petition contained the signatures of 10,000 duly qualified registered voters of the City of New Orleans on May 12, 1983, or whether the required number of certified signatures was not obtained until June 22,1983, when the Registrar certified the sufficient number of names from the original and supplemental lists. If the petition was valid on May 12, the election should have been called for the next regularly scheduled election on October 22, 1983. If, on the other hand, the 10,000 names are not certified from the May 12 list, then the Council should not be mandated to call the election for October 22. Accordingly, it is necessary that the Registrar of Voters continue to search through the names on the May 12 list to ascertain whether or not there are 10,000 signatures of duly qualified registered voters of the City.
Having so concluded, we reverse and set aside the judgment of the trial court insofar as it relieves the Registrar of Voters from the responsibility of continuing the search and dismisses the Registrar from the suit. The judgment mandating the City Council is affirmed. The judgment is recast as follows:
IT IS ORDERED that the Registrar of Voters for the Parish of Orleans continue the search of the May 12, 1983 list of petitioners to ascertain whether it contains the signatures of not less than 10,000 duly qualified registered voters of the City on that list. The Registrar is permitted until not later than Wednesday, August 3, 1983 at 4 P.M. to certify whether or not the May 12 list contains the minimum number of signatures. If the Registrar certifies to the Council on or before the 4 P.M. August 3 deadline that the May 12 list contains the signatures of not less than 10,000 duly qualified registered voters of the City of New Orleans, the City Council is ordered to meet not later than August 4,1983, and to adopt an ordinance submitting to the electors of the City of New Orleans the proposed charter amendment at the election to be held on October 22, 1983. The Council is further ordered to make the publication as required by Section 9-202(2) of the Home Rule Charter of the City of New Orleans.
If the Registrar of Voters certifies to the City Council on or before 4 P.M. August 3, 1983 that the May 12 list contains less than 10,000 signatures of duly qualified registered voters of the City, the Council is relieved of its responsibility to call the election for October 22, 1983.
JUDGMENT AFFIRMED IN PART; REVERSED IN PART; RECAST AND RENDERED.

. The Charter provides: “Section 4 — 201.
Election and Term. The electors of the City shall elect a Mayor on the first Tuesday following the first Monday in April, 1954, and in every fourth year thereafter. He shall take office on the first Monday in May. The election shall be conducted in accordance with the general election laws of the State. No person who shall have been elected for two full consecutive terms as Mayor under this Charter shall be eligible to succeed himself.”
The petition seeks to amend the Charter as follows:
“Section 4-201. Election and Term. The electors of the City shall elect a Mayor on the first Saturday in February 1982 and in every fourth year thereafter. He shall take office on the first Monday in May. The election shall be conducted in accordance with the general election laws of the State.”

. Section 9-201 provides:
“Method of Amendment. This Charter may be amended or replaced only by the affirmative vote of a majority of the qualified electors of the City voting upon such amendments or proposed Charters. Proposals to amend or replace this Charter may originate only in the following manner:
(a) By ordinance of the Council.
(b) By petition of not less than ten thousand of the duly qualified registered voters of the City filed with the Council, setting forth the proposed amendments or substitute home rule Charter.”

. LSA-R.S. 18:221(A), in the Election Code, provides, in pertinent part:
“The [mandamus] proceeding shall be against the registrar as sole defendant and may be instituted and prosecuted without cost to the district court....” (emphasis ours)