Dear Speaker Salter:
Your request for an Attorney General's opinion has been referred to me for research and reply. You inquire whether the increased retirement benefits granted to peace officers (other than state troopers) at the Department of Public Safety and Corrections ("DPS") under Act 835 of the 2006 Regular Session of the Louisiana Legislature apply to all retirement service credit in Louisiana State Employees Retirement System ("LASERS") or just to service credit as a peace officer in LASERS. Your position[1] on this issue is well-stated in your opinion request as follows:
 My intent in authoring the bill was to provide certain DPS peace officers (other than state troopers) with the same retirement benefits as state troopers, calculated at 3.33% rate for all creditable service with LASERS or only for creditable service as a peace officer. It was my intent to provide for the increased benefit for all creditable service with LASERS, as evidenced by the actuarial note which calculated the actuarial accrued liability costs of the legislation based on the number of eligible employees (134) and the number of years of ALL past service credit with LASERS, not just the past credit as a peace officer. The legislature then provided funds to cover the estimated actuarial cost for this fiscal year.
Your request requires knowledge of the factual history and statutory context. Before 1997, the peace officers referred to above worked for the Department of Transportation and Development ("DOTD") as the Weights Standards Police Force. In 1997, however, a re-organization occurred at DOTD resulting in the transfer of this division to the Department of Public Safety and Corrections where these workers became "peace officers." La. R.S. 36:409 (C) (8).
Only a careful review and analysis of the new statutory language will answer the extent to which the service benefits apply. The new law is codified at La. R.S. 11:444 (A) (2) (b) which provides as follows:
 Peace officers, as defined by R.S. 40:2402(1)(a), employed by the Department of Public Safety and Corrections, office of state police, other than state troopers, shall receive a maximum retirement allowance equal to three and one-third percent of average compensation, as determined under R.S. 11:231, for every year of creditable service, not to exceed one hundred percent of the member's average compensation.
This Subparagraph confers the benefit "for every year of creditable service." This language is clear and unambiguous. The legislature did not use any words of limitation or restriction of any kind within this clause. The drafters could have said "for every year of creditable service as a peace officer beginning with 1997." But the legislature did not. When the legislature has intended to place limitations on other groups, it has had little trouble finding language restricting the benefit. For instance, La. R.S. 24:36 (A) provides that "[a]ll members who are or have been members of the Louisiana Legislature . . . shall receive an additional benefit equal to one percent times the number ofyears of service in the Louisiana state legislature. . . ." This language shows that the legislature intended to limit the benefit to only the members' years of service in the legislature — a stark contrast to the language set forth in Act 835 which allows "for every year of creditable service." Another example is provided by La. R.S. 11:557 (A). This statute confers an additional benefit equal to one percent times the number of years of service as a judge or court officer. . . ." "Every year of creditable service" is replaced in this statute with restrictive language as well. In short, the plain language of Act 835 provides that DPS peace officers are to be paid not only for those years of service as peace officers, but "for every year of creditable service" in the retirement system.[2]
The words used in Act 835 by the legislature render an unmistakably distinct picture of the additional benefits it intended to confer upon peace officers. "When the wording of a revised statute is clear and unambiguous . . . the law must be applied as written, and no further interpretation can be made in search of the intent of the legislature."Taggert v. Our Lady Queen of Heaven Catholic Church, 893 So.2d 1001
(La.App. 3d Cir. 2004). But even if, for the sake of argument, the legislative history has to be examined because the statutory language is ambiguous, the legislative history supports the conclusion that Act 835 has applicability to all retirement service credit in LASERS. The legislation required the use of an actuary to determine the actuarial accrued liability for such a benefit. A review of the Actuarial Cost Note indicates that the actuary, in making his calculation for this benefit, included all past service liabilities in LASERS "for every yearof credited service." The actuary had to report this information correctly to the legislature. Nothing in his Note indicates that he restricted or limited his calculation. This signifies that the legislature intended for the legislation to apply to every year in the retirement system.
The same is shown by Act 17 of the 2006 Regular Session of the Louisiana Legislature which contains funds for payment of this particular project. Act 17 appropriated $625,000 for the first year's amortization payment for this new benefit. If the new law only applied to service credit as a peace officer, the legislature would not have found it necessary to make such a large appropriation. In summary, even if the language of the statute is ambiguous, a review of the legislative history shows that the law demands that benefits be paid to peace officers at the maximum retirement allowance equal to three and one-third percent of average compensation, for every year of creditable service in LASERS, not only for service as a peace officer.
Even if both the language and legislative history of Act 835 support the payment of benefits to peace officers at the maximum retirement allowance for every year of creditable service in LASERS, La. R.S. 1:2
provides that "no section of the Revised Statutes is retroactive unless it is expressly so stated." Despite this statutory language, well-accepted principles of statutory construction mandate that Act 835 does have retroactive effect in this case. This principle was enunciated by the Court in White v. Board of Trustees of Teachers' RetirementSystem of Louisiana, 276 So.2d 714 (La.App. 1st Cir. 1973) as follows:
 Legislation providing for pension systems is remedial legislation and should be construed liberally. In 70 C.J.S. Verbo Pensions s 2, pp. 425-426, we find:
 `Laws creating the right to pensions must be liberally construed with the view of promoting the objects of the lawmaking body; and their force and effect are not to be confined to the literal terms of the statute.'
 In Miller v. City of Shreveport, La.App., 90 So.2d 565, the court said:
 `Statutes which are purely remedial in their nature are not subject to the rule that laws are presumed to operate prospectively and retrospectively. [Citations omitted.] Such statutes will be given a retroactive effect in the absence of language showing contrary intention. [Citations omitted.] As pointed out in Bowen v. Board of Trustees of the Police Pension Fund, supra, it is essential for the legislature to alter the regulations and requirements of the pension system to keep abreast with actuarial science. Such legislation is, of course, remedial in character.'
 * * * The Trial Judge, in his written reason for judgment, very ably pointed out the general rules for statutory interpretation and the exception to the general rules, as follow sic:
 The general rule of statutory construction is that statutes are applied prospectively unless the contrary is expressly stated. (La. R.C.C. art. La. R.S. 1:2). The exception to this rule of statutory construction is that statutes which are purely remedial in their nature are presumed to operate retrospectively in the absence of language showing a contrary intention. Statutes governing pension funds are generally held to be remedial. [Citations omitted.]'
The principle of retroactivity has been applied in practice to three other recently passed retirement statutes — Act 897 of the 2001 Regular Session of the Louisiana Legislature which deals with the school employee retirement system, Act 1160 of the 2001 Regular Session of the Louisiana Legislature which concerns the state police retirement system and Act 703 of the 2003 Regular Session of the Louisiana Legislature which involves wildlife agents who are members of LASERS.
It is the opinion of this office that Act 835 requires LASERS to pay peace officers not only for those years of service as peace officers, but "for every year of creditable service" in the retirement system. The legislative history need not be examined because Act 835 is clear and unambiguous. But if an examination and analysis of the legislative history were to be undertaken, an identical conclusion would be reached. Finally, although the general rule of statutory construction provides that statutes are to be applied prospectively, the White case indicates that Act 835 is remedial in nature, and therefore, must be given retroactive effect.
I hope this answers your inquiry, but if I can be of further assistance, please do not hesitate to contact me.
 Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By:______________________ Christopher D. Matchett Assistant Attorney General
 CCF, Jr:CDM:ls
[1] In preparing this opinion, this office gave the Executive Counsel of LASERS and LASERS' Executive Director extensive time and opportunity to brief and advocate LASERS' position on the issues presented herein. LASERS took the position that the increased retirement benefits only apply to a peace officer's service credit. In other words, LASERS believes that the new statute does not require it to pay additional benefits to peace officers for service in other positions. Accordingly, LASERS has refused to pay any new benefits to DPS peace officers for creditable service earned in other positions or offices in spite of the legislative mandate set forth in newly enacted Act 835 of the 2006 Regular Session of the Louisiana Legislature.
[2] This interpretation will mean that peace officers within the Department of Public Safety will earn a greater percentage of their final average retirement compensation each year than regular LASERS members. However, this is well within the legislative prerogative. La. Const. Art. X, Sec. 29 provides that "benefit provisions for members of the state and statewide public retirement systems shall only be altered by legislative enactment." Thus, if the legislature decides, as it has done, to enhance the retirement benefits of peace officers for all creditable service which they may have rendered, it is certainly within the legislature's constitutional power and authority to so act.